Francis S. Male, as Trustee for Gilbert W. Chapin, Appellant, *v.* The Atchison, Topeka and Santa Fe Railway Company, Respondent.

**Stock corporations — railroads — acquisition and ownership of stock of one railroad company by another — bonds of first company — when company owning stock of such company not liable for payment of such bonds upon default of first company thereon — foreclosure of mortgage securing such bonds — when holding company may lawfully buy at foreclosure sale property of first company covered by such mortgage.**

1. The mere purpose of the stockholders of one railroad, or of the railroad company itself, to acquire another does not make the company which does acquire the other liable to its creditors and stockholders. While it is true that no scheme of reorganization which contemplates the transfer to the original stockholders of stock in the new corporation unburdened by the old debts can be upheld, this principle does not apply where title to the property of the original company was acquired by purchase on a foreclosure sale, with no agreement or understanding that those interested in the original company were to be benefited directly or indirectly by the reorganization.

2. A company organized to build a railroad from the terminus of another to the Pacific coast owned a right of way on which it had built a few miles of track and then became insolvent. Most of the stock of the projected railroad was owned by the defendant railroad company and another. These companies and the company owning the projected railroad made a contract by which the new railroad was to be constructed from the proceeds of bonds of the projected railroad and none of these proceeds were diverted to either of the other companies, but were received by the projected railroad company. *Held*, that under such circumstances the holders of these bonds were not creditors of the other railroad companies; that no contractual relation existed between them; that these companies were separate and independent corporations and the fact that they owned a majority of the stock of the projected road is immaterial unless they fraudulently misused their power.

3. On examination of the allegations of the complaint as to transactions between the projected road and defendant, resulting in a foreclosure and sale of the former, which transactions plaintiff claims give a right of action against defendant, the property being claimed to be

worth much more than it brought on the sale, *held*, that that fact is, in the absence of allegations of fraud and conspiracy, immaterial in a collateral action like the present brought by a holder of the income bonds against the defendant. (*Northern P. Ry. Co.* v. *Boyd*, 228 U. S. 482; *Kansas City So. Ry. Co.* v. *Guardian Trust Co.*, 240 U. S. 166, and *Louisville Trust Co.* v. *L., N. A. & C. Ry. Co.*, 174 U. S. 674, distinguished.)

*Male* v. *Atchison, Topeka & Sante Fe Ry. Co.*, 179 App. Div. 87, affirmed.

(Argued November 17, 1920; decided December 10, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 27, 1917, affirming a judgment in favor of defendant entered upon an order of the court at Special Term sustaining a demurrer to and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William G. Cooke* and *Howard O. Wood* for appellant. The old Atchison made itself liable for the principal and interest of the income bonds, and the respondent under the reorganization succeeded to that liability. (*N. P. R. R. Co.* v. *Boyd*, 228 U. S. 482; *Quade* v. *Ratkowsky*, 183 App. Div. 433; *Pacific Term. Co.* v. *Int. Com. Com.*, 219 U. S. 523; *Searchlight Co.* v. *Am. Graphophone Co.*, 240 Fed. Rep. 745; *Goss & Co.* v. *Goss*, 147 App. Div. 702; 207 N. Y. 742; *A., T. & S. F. R. R. Co.* v. *D. & N. O. R. R. Co.*, 110 U. S. 667; *Barrett* v. *Drew*, 57 N. Y. 587; *Hurd* v. *Laundry Co.*, 167 N. Y. 95; *Hazard* v. *Wight*, 201 N. Y. 399; *Jackson* v. *Ludeling*, 21 Wall. 616.) Irrespective of the old Atchison's liability, the unsecured creditors of the Atlantic Company were entitled to participate in the reorganization, and the new corporation is liable for the claims of such of those creditors as were ignored in that proceeding. (*K. C. S. Ry. Co.* v. *Guardian Trust Co.*, 240 U. S. 166; *Louisville Trust Co.* v.

*Louisville, etc., Ry. Co.*, 174 U. S. 674; *Central Improvement Co. v. Cambria Steel Co.*, 201 Fed. Rep. 811.) The judicial sale, through which respondent obtained possession of the western division, was a nullity, and that property is subject to levy and sale for the satisfaction of such judgment as the plaintiff may recover against the Atlantic Company upon the bonds in suit. (*Nat. Traders' Bank v. Wetmore*, 124 N. Y. 241; *Patchen v. Rofkas*, 52 App. Div. 367; *N. P. R. R. Co. v. Boyd*, 228 U. S. 482; *Acer v. Hotchkiss*, 97 N. Y. 305; *Arnold v. Green*, 116 N. Y. 572; *Dunlop v. James*, 174 N. Y. 416; *Schmitt v. Henneberry*, 48 Ill. App. 322; *Budd v. Oliver*, 148 Penn. St. 194.)

*S. T. Bledsoe* and *A. S. H. Bristow* for respondent. The old Atchison was not liable upon the ground that the bonds were issued for its exclusive use and benefit. (*Briggs v. Partridge*, 64 N. Y. 357; *Schaefer v. Henckel*, 75 N. Y. 378; *Henricus v. Engler*, 137 N. Y. 488; *Case v. Case*, 203 N. Y. 263; *Farrar v. Lee*, 10 App. Div. 130; *Stone v. C., etc., Ry. Co.*, 202 N. Y. 352; *P. P. Car Co. v. M. P. Ry. Co.*, 115 U. S. 587; *Penn. R. R. Co. v. Jones*, 155 U. S. 333; *Peterson v. C., R. I. & P. R. R. Co.*, 205 U. S. 364; *Senior v. N. Y. C. Ry. Co.*, 111 App. Div. 39; 187 N. Y. 559.) The sale under foreclosure of the Atlantic Company's property was valid as against the income bondholders, and respondent acquired the property so sold free from claims of such bondholders. (*C. & S. R. R. Co. v. Blair*, 214 N. Y. 497; *Richter v. Jerome*, 123 U. S. 233; *People v. O'Brien*, 209 N. Y. 366; *Knowles v. City of New York*, 176 N. Y. 430; *Riddle v. Bank of Montreal*, 145 App. Div. 207; *Fogg v. Blair*, 139 U. S. 118; *Kent v. Lake Superior Canal Co.*, 144 U. S. 91; *Ward v. Town of Southfield*, 102 N. Y. 287; *Smith v. Nelson*, 62 N. Y. 286; *Ross v. Wood*, 70 N. Y. 10.) Appellant is not entitled to bring this action upon the theory of reaching equitable assets because he has not exhausted his remedy at law, by means of a judgment and execution thereon

returned unsatisfied, as against the Atlantic and Pacific Company. (*Adee* v. *Bigler,* 81 N. Y. 349; *Harvey* v. *Brisbin,* 143 N. Y. 151; *Trotter* v. *Lisman,* 199 N. Y. 497; *National Bank* v. *Wetmore,* 124 N. Y. 241; *Trotter* v. *Lisman,* 209 N. Y. 174; *Cramer* v. *Williams,* 131 App. Div. 236; 203 N. Y. 369.)

ANDREWS, J.   The plaintiff owns $120,000 of the income bonds of the Atlantic and Pacific Railroad Company. Because of certain facts alleged in his amended complaint he claims that the defendant is liable for this sum.   A demurrer was interposed to this complaint and sustained. The question before us is whether such action was right.

At the outset it should be noticed that certain allegations of the complaint need not be considered.   They either state conclusions of law or are immaterial in that instead of pleading the facts they state what some one said or admitted in regard to them.   Apart from them, however, it appears that the Atlantic and Pacific Railroad Company was authorized to build a railroad from Springfield, Mo., to the Pacific passing through Albuquerque. In fact but a few miles had been built in Missouri and the company was insolvent.   It did have, however, under its act of incorporation, certain land grants in New Mexico and Arizona — valueless until a railroad passed through them.   The St. Louis and San Francisco Railway Company had a line in Missouri and Indian Territory with a branch which was to run to Wichita and there connect with the road of the Atchison, Topeka and Santa Fe Railroad Company.   The lines of the latter company ran from the east to Albuquerque.   It desired to extend thence to the Pacific, but had no available route.   The Atchison and the St. Louis each owned slightly less than half of the stock of the Atlantic and Pacific.

With affairs in this condition a contract between the three companies was made in 1880.   It was agreed that

11

the line of the Atlantic and Pacific should be built by the parties from Albuquerque to California. The· purpose of this construction, it is said, was to furnish the Atchison an outlet to the Pacific coast and was for its exclusive use and benefit. It was to connect with its lines at Albuquerque and was for thirty years to be operated as a through line for it. All business from the extension was to pass to the east over the Atchison road. The construction westward was five hundred and eighty-one miles long. It ran through a barren wilderness and was useless except as furnishing the Atchison an outlet to the Pacific. And in fact the road was built, equipped and operated under the control .and for the benefit of the Atchison and the debts and obligations incurred in the name of the Atlantic and Pacific were for the benefit of the Atchison.

The construction was to be and was financed by bonds of the Atlantic and Pacific. It is not claimed ·that their proceeds were diverted to the Atchison or that the proceeds were not received by the Atlantic and Pacific. Under such circumstances the .bondholders were not creditors, legally or equitably, of the Atchison. No contractual relation existed between them. The bonds were sealed instruments and on their face were the obligations of the Atlantic and Pacific. It received the proceeds from them. It used them to build a road the legal title to which it held. That the Atchison and the St. Louis owned a majority of the Atlantic and Pacific stock is immaterial unless they fraudulently misused their power. The companies were separate and independent corporations. Even as between them while the contract may have been improvident, no cause of action is stated against the Atchison.

The bonds so issued by the Atlantic and Pacific consisted of $16,000,000 first mortgage bonds,˙ afterwards held as collateral security for $16,000,000 of bonds guaranteed by the Atchison and the St. Louis, issued as

a substitute for them; $5,600,000 of second mortgage bonds, and $12,000,000 of income bonds.   These various issues were made between 1880 and 1887.   The first mortgage and the income bonds were delivered to and sold by the Atchison and the St. Louis, acting clearly as agents for this purpose of the Atlantic and Pacific.   A large majority of the stock of the latter company continued to be held by the former companies so that they dominated and controlled the affairs of the Atlantic and Pacific. This is so as to the majority stockholders of every corporation.   No consolidation is so effected.   (*Pullman's P. C. Co.* v. *Missouri Pac. Ry. Co.*, 115 U. S. 587.)   In 1890, through its acquisition of practically all the stock of the St. Louis, the Atchison became the real and practical owner of seven-eighths of the stock of the Atlantic and Pacific.

In 1893 the Atchison and the St. Louis were in financial difficulties.   Receivers, the same in both companies, were appointed.   Again, the same men were named in proceedings to foreclose trust mortgages.   They were directed to operate such other roads as had been operated as part of the Atchison system and it is said this included the Atlantic and Pacific.   Obviously they could not take possession of the latter road.   It is not claimed that they did.   But they held its second mortgage bonds and they caused an action to be begun to foreclose them.   In this action they were again made receivers.

In 1895 the holders of the stock and bonds of the Atchison entered into a plan for reorganization.   The plan was to allow the foreclosure suit against it to proceed to judgment and the property to be bought in by the reorganization committee.   It was then to be conveyed to a new corporation, which should distribute its stock and bonds to the original stock and bondholders.   This was done. The new corporation so formed was the defendant known as the Atchison, Topeka and Santa Fe Railway Company, · or briefly as the new Atchison.   Under this plan doubtless

any non-assenting creditors of the old road would have a claim against the new.

Meanwhile the Atlantic and Pacific had failed to pay interest on its substituted guaranteed bonds for which $16,000,000 of first mortgage bonds were held as collateral. The sale of this collateral was caused by the holders of the guaranteed bonds. The bonds were purchased by outsiders. The amount received on this sale does not appear nor whether it was enough to pay the trust bonds guaranteed by the Atchison and the St. Louis.

At any rate the trustee representing the purchasers sued to foreclose these first mortgage bonds. The suit was bitterly opposed both by the old and by the new Atchison. How or why they were parties does not appear. Probably they acted through the trustee of the second mortgage. At any rate in 1896 a decree of sale was made. And in 1897, before any sale was held, the new Atchison purchased all these bonds. It had a perfect right to do so. Whether it owned or did not still own most of the stock of the Atlantic and Pacific is immaterial. In either event the transaction was clearly a purchase and not the payment of a debt. These bonds were solely the liability of the Atlantic and Pacific. Upon them no liability attached to the Atchison. Whether the guaranteed bonds or any part of them were outstanding or whether they had been paid by the sale of the collateral we do not know. The complaint says " by which purchase and payment it was agreed that the new Atchison Company should be and they were released from all obligations under the old Atchison's Company's guarantee." An agreement with the one who at that time owned these bonds or a purchase from or a payment to him could have had no such effect unless he were also the owner of the guaranteed bonds. This is not said. If made in good faith and without fraud, and nothing appears to the contrary, the purchase was unobjectionable. Some claim is made that as guarantor on the bonds to

which the bonds in question were collateral the Atchison was bound to pay these first mortgage bonds. This cannot be so. The Atlantic and Pacific was the primary debtor on the guaranteed bonds. As security it had given its own further obligations. There is no principle by which the guarantor became liable to pay the guaranteed debt to a purchaser of these collateral securities.

Having acquired the bonds the new Atchison enforced the judgments of foreclosure and sale. A sale. was had and the Atlantic and Pacific was bought in by the reorganization committee for $12,000,000, leaving a large deficiency. Only the expenses of the sale were actually paid, but as the new Atchison owned all the bonds this is easily understood. The property was then transferred to the new Atchison. In all these transactions there is no charge of facts showing fraud or conspiracy. This being so the claim that the property was worth $100,000,000 instead of $12,000,000, which it brought on the sale, is immaterial in a collateral action like the present.

The complaint fails to state a cause of action. It is said the plaintiff was a creditor of the Atchison. Upon the reorganization, the new company succeeded to this liability. Were the premise well founded very possibly the conclusion would follow. But in our opinion the claimed relation of debtor and creditor did not exist. It is said that the reorganization included a purpose to effect the acquisition of the Atlantic and Pacific, and so the new company became liable for its debts. This is to mistake the meaning of the cases to which we are referred. The mere purpose of the stockholders of one road or of the road itself to acquire another does not make the company which later does in fact acquire the other liable to its creditors or stockholders. It is true that no scheme of reorganization which contemplates the transfer to the original stockholders of stock in the new corporation unburdened by the old debts can be upheld. Such a plan, however effected, cannot be allowed. No

such case is presented to us.  In this reorganization neither the Atchison nor the new Atchison received anything by virtue of their ownership of Atlantic and Pacific stock.  No such condition was contemplated.  Title to its property was acquired by purchase on a foreclosure sale, with no agreement or understanding that those interested in the Atlantic and Pacific were to be benefited directly or indirectly by the reorganization.  It is said further that the foreclosure of the Atlantic and Pacific mortgage and the sale thereunder was void, because the debt was paid, and that the new Atchison took the property still incumbered by all liens upon it.  Again we cannot agree with the premise.  Nor on other grounds may the complaint be sustained.  It is not charged that the Atchison as majority stockholder so diverted the income of the Atlantic and Pacific as to make it incapable of paying the interest on its bonds, that it might obtain control of its property to the injury of its creditors and minority stockholders or that it diverted the property of the Atlantic and Pacific into its own treasury.  Some or all these conditions exist in such cases as *Northern P. Ry. Co.* v. *Boyd* (228 U. S. 482); *Kansas City So. Ry. Co.* v. *Guardian Trust Company* (240 U. S. 166), and *Louisville Trust Company* v. *L., N. A. & Ch. Ry. Co.* (174 U. S. 674).

The judgment appealed from must be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND and MCLAUGHLIN, JJ., concur; CHASE, J., not voting.

Judgment affirmed.