[Civ. No. 2151. Fourth Appellate District.—March 4, 1938.]

BESSIE R. PIERCE, Administratrix, etc., et al., Respondents, v. RIVERSIDE MORTGAGE SECURITIES COMPANY (a Corporation), Appellant.

A. Heber Winder for Appellant.

Clay & Handy for Respondents.

MARKS, J.—Arthur W. Pierce and Bessie R. Pierce brought this action against defendant for rescission of a contract of purchase of a deed of trust and promissory note from the Riverside Securities Company through the Riverside Mortgage Company. ■ They were successful in their action and defendant has appealed from the judgment and from the order denying its motion for new trial. Such an order is not appealable (sec. 963, Code Civ. Proc.) and the attempted appeal from it must be dismissed.

Arthur W. Pierce died after the entry of judgment. Bessie R. Pierce was appointed administratrix of his estate and has been substituted in his place.

The second amended complaint sought rescission of the contract of purchase because of fraud on the part of the Riverside Mortgage Company. The trial judge found all of the allegations of fraud to be true. The evidence fails to sustain some of the findings of fraud. However, we will assume that the findings of some of the fraudulent representations find support in the evidence and were of substantial and material facts. This will enable us to proceed to a consideration of the important question presented on this appeal, namely, the responsibility of the Riverside Mortgage Securities Company for the fraud of the Riverside Mortgage Company.

The Riverside Mortgage Company is a California corporation organized for the purpose of dealing in real estate and securities. In 1923 it organized an investment trust. The declaration of trust was amended in 1926. In our statement of facts we will concern ourselves with the declaration of trust as amended.

The declaration of trust carefully avoided use of the words "trust", "trustee", "trustor" and "beneficiaries",

but its legal effect cannot be doubted. The Security Title Insurance & Guarantee Company, called escrow holder, was trustee. The Riverside Mortgage Company was the trustor and a beneficiary. Holders of guaranteed investment certificates were primary beneficiaries. The trust fund consisted of real and personal securities and income therefrom as well as money. For brevity we will refer to the trust estate as securities.

The Riverside Mortgage Company bought mortgages, deeds of trust, and other securities which it deposited with the title company. Guaranteed investment certificates were issued against this trust fund, which was required to equal one hundred and twenty-five per cent of the par value of the outstanding certificates. In case the value of the securities fell below that figure it became the duty of the title company to demand additional security or money from the Riverside Mortgage Company. In case the added securities or money were not furnished by the Riverside Mortgage Company the guaranteed investment certificate owners could cause the sale of the *corpus* of the trust and the distribution of the proceeds, thus liquidating the trust.

The guaranteed investment certificate owners were to receive the interest specified in their certificates. After paying this interest, certificates when due, and the expenses of the trust, any surplus of trust income remaining was paid to the Riverside Mortgage Company.

Some of the mortgages and deeds of trust were not paid and the Riverside Mortgage Company had to take over the encumbered property. In 1926 the Riverside Securities Company was organized by the Riverside Mortgage Company. The Riverside Securities Company was owned and controlled by the Riverside Mortgage Company and acted as a holding company for the Riverside Mortgage Company in taking title to this real property. It also issued mortgages and deeds of trust on some of it.

In August, 1930, the Riverside Securities Company held title to an apartment house in the city of Elsinore. It issued a deed of trust on this property to secure its promissory note in the sum of $5,000, due three years after date, with interest at eight per cent per annum, payable to the Riverside Mortgage Company.

In November, 1930, Arthur W. Pierce approached the Riverside Mortgage Company with a view of purchasing a mortgage and note. He was shown the Elsinore property and, on November 20, 1930, bought the deed of trust on it and the note for $5,000. The property had been sold to a Mrs. Gardner. The interest was paid fairly regularly until some time in 1933 when small amounts of interest were occasionally paid for something over a year. Shortly thereafter interest payments stopped. On November 20, 1930, the apartment house property had a reasonable market value of $7,500.

In 1931 the financial difficulties of the Riverside Mortgage Company became acute. In March of that year it organized the Riverside Mortgage Securities Company under the laws of Delaware. As originally organized it had classes "A", "B", and "C" preferred stock, besides common stock. It was the idea of the incorporators to sell at least its class "A" preferred stock in order to carry on the operations formerly conducted by the Riverside Mortgage Company. This plan was never carried out because of the intervention of the guaranteed investment certificate owners.

In 1931 guaranteed investment certificates in a sum in excess of $565,000 had been issued against the trust fund. As the value of the securities in the trust fund had become impaired the title company demanded of the Riverside Mortgage Company that it place additional securities in the trust. As it failed to do this the guaranteed investment certificate owners were informed of this condition and advised to take steps to protect their interests.

At a meeting of about five hundred of these owners a committee of seven was selected to study the situation and devise some plan to save as much of the investment as possible. As the market for both real estate and securities was then greatly depressed it was evident that liquidation of the trust by a sale of the *corpus* as provided in the declaration of trust would result in a very serious loss to the investors. It seemed advisable to the committee to work towards a slow liquidation of these trust assets. To that end it was decided to take over the Riverside Mortgage Securities Company and reform its corporate structure to fit the new situation as that corporation was already organized. Its articles of incorporation were amended so that it had preferred stock, and class "A" and class "B" common stock.

It was proposed to exchange twelve and one-half shares of preferred stock for each one hundred dollar guaranteed investment certificate, class "A" common stock for the preferred stock of the Riverside Mortgage Company, and class "B" common stock for the common stock of that company. The commissioner of corporations of California authorized these exchanges. The guaranteed investment certificates were to be escrowed with the title company and the exchange effected by it.

A few of the guaranteed investment certificate owners refused to consent to the exchange. Thus the plan worked out by the committee was halted and a sale of the *corpus* of the trust was forced. After due notice the sale was had at the Riverside County courthouse. There were several bidders and the Riverside Mortgage Securities Company was finally awarded the property for $128,900. The bid was for cash but it was not paid in cash. The nonconsenting guaranteed investment certificate holders were paid twenty-seven cents on the dollar for their certificates. The other certificates were canceled and preferred stock of the Riverside Mortgage Securities Company was issued to the owners on the basis we have outlined. Thus the *corpus* of the trust passed to the corporation and all the guaranteed investment certificates were canceled, their former owners, except those paid in cash, became owners of preferred stock in the Riverside Mortgage Securities Company. The preference on this stock gave these stockholders the first right to dividends and the first right to the assets of the corporation up to the par value of their stock. Neither class of common stock can participate in dividends or distribution of capital assets until the preferred stockholders have been paid in full.

Among the assets of the trust were mortgages or deeds of trust made by the Riverside Securities Company on a number of apartment houses. The incumbrances were released and the properties conveyed to the Riverside Mortgage Securities Company. The apartment houses were furnished, the furniture belonging to the Riverside Securities Company which owed (on the books) a considerable sum to the Riverside Mortgage Company. The Riverside Securities Company sold this furniture to the Riverside Mortgage Company for $73,000 and received a book credit for that amount. Because of failure to pay its franchise tax the right of the

Riverside Securities Company to do business was suspended and it passed peacefully out of the picture.

The Riverside Mortgage Company sold its office furniture and the apartment house furniture to defendant for $32,200. This was apparently paid in cash and as far as the record shows the money actually went into the treasury of the Riverside Mortgage Company. That company is still in existence and is still doing business as some of its stockholders refused to exchange their stock in it for stock in the defendant company.

At the time of the amendment of the articles of incorporation of the Riverside Mortgage Securities Company it was agreed that five of its seven directors be chosen from the guaranteed investment certificate owners and two from the former stockholders of the Riverside Mortgage Company. This agreement was carried out. About eighty-four per cent of the issued stock of defendant is owned by former guaranteed certificate owners and the balance by former stockholders in the Riverside Mortgage Company. All classes of stock have equal voting rights.

The sole business of defendant is liquidation of its assets in the hope that its preferred stockholders, former guaranteed investment certificate owners, may receive back as large a portion of their original investments as possible. It is engaging in no other business.

The theory upon which this action was brought is that the Riverside Mortgage Securities Company is a reincarnation of the Riverside Mortgage Company and as such is liable to the creditors of that company. Under this theory the trial court found:

"That it is true that the said Riverside Mortgage Company did, and has, since November 20, 1930, reorganized and continued and merged itself into the defendant, Riverside Mortgage Securities Company, and claims to these plaintiffs, and holds out to these plaintiffs, no metamorphosis of the said Riverside Mortgage Company, and claims to have no obligation to the plaintiffs by reason of the herein alleged transaction, or at all, and the said defendant has taken to itself, without adequate or any consideration, the business and all of the assets of the Riverside Mortgage Company, and the Riverside Securities Company, and the said defendant by its said acts has left said corporations, and each of them, mere

shells without property or credit, and does carry on the business of the said Riverside Mortgage Company.

"That it is true that the said defendant is, as to these plaintiffs, the same entity as the Riverside Mortgage Company, and in its stockholders is the same in identity except that its present stockholders are former stockholders in the Riverside Mortgage Company augumented by former creditors of said company who have released their respective claims for the stock of the defendant."

■ The question of the right of what we will call an old corporation to sue what we will call a new corporation that has taken over the assets of the old has been a frequent source of litigation and the books are full of decisions on that question. There is a surprising harmony of decision along clearly marked and established lines. These are summarized in *Chase* v. *Michigan Tel. Co.*, 121 Mich. 631 [80 N. W. 717]. It is there held that the new corporation is liable for the debts of the old; (1) where two corporations consolidate or form a new corporation without making provisions for payment of the obligations of the old; (2) where by express or implied agreement the purchasing corporation promises to pay the debts of the old; (3) where the new corporation is but a continuance (reincarnation) of the old; (4) where the sale is fraudulent and the property of the old can be followed into the new. (See, also, *Good* v. *Ferguson & Wheeler Land, L. & H. Co.*, 107 Ark. 118 [153 S. W. 1107, Ann. Cas. 1915A, 544] .) These rules are somewhat differently stated in *West Texas Refining & D. Co.* v. *Commissioner of Int. Rev.*, 68 Fed. (2d) 77, as follows:

"The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. (*Racine E. & M. Co.* v. *Confectioners M. & M. Co.*, [C. C. A. 7] 234 Fed. 876, 879; *Ozan Lumber Co.* v. *Davis Sewing M. Co.*, [D. C. Del.] 284 Fed. 161, 164; *Drovers' & Mechanics' Nat. Bank* v. *First Nat. Bank*, [C. C. A. 4] 260 Fed. 9, 14, 15; *Burkholder* v. *Okmulgee Coal Co.*, 82 Okl. 80 [196 Pac. 679] ; *Cooper* v. *Utah Light & Ry. Co.*, 35 Utah, 570 [102 Pac. 202, 136 Am. St. Rep. 1075] ; *Colorado Springs R. T. R. Co.* v. *Albrecht*, 22 Colo. App. 201 [123 Pac. 957] ; Fletcher Cyc. Corporations [Perm. Ed.], vol. 15, sec. 7122.)

"To this general rule there are four well-recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. (*Ozan Lumber Co.* v. *Davis Sewing Machine Co., supra; Spring Creek Oil Corp.* v. *Dillman,* 90 Okl. 129 [215 Pac. 1053]; *Luedecke* v. *Des Moines Cabinet Co.,* 140 Iowa, 223 [118 N. W. 456, 32 L. R. A. (N. S. ) 616]; *Valley Bank* v. *Malcolm,* 23 Ariz. 395 [204 Pac. 207]; *Swing* v. *Empire Lbr. Co.,* 105 Minn. 356 [117 N. W. 467]; Fletcher Cyc. Corporations [Perm. Ed.], sec. 7122.)''

We have been cited to and have found no California cases where it has been necessary to apply the four exceptions to the general rule of corporate nonliability. However, two of them (reincarnation and fraud) have been expressly adopted and the other two are supported by sound reason and by excellent and ample authorities from other jurisdictions. (See *Koch* v. *Speedwell Motor Car Co.,* 24 Cal. App. 123 [140 Pac. 598]; *Strahm* v. *Fraser,* 32 Cal. App. 447 [163 Pac. 680]; *Anderson* v. *Van Camp Sea Food Co., Inc.,* 98 Cal. App. 787 [277 Pac. 1099]; *Blanc* v. *Paymaster Min. Co.,* 95 Cal. 524 [30 Pac. 765, 29 Am. St. Rep. 149]; *Higgins* v. *California Petroleum Co.,* 122 Cal. 373 [55 Pac. 155]; *Stanford Hotel Co.* v. *M. Schwind Co.,* 180 Cal. 348 [181 Pac. 780].)

When we analyze the facts before us we cannot bring them within any of the four settled exceptions to the general nonliability rule. There was no contract, express or implied, on the part of defendant to pay the debts of the Riverside Mortgage Company. The corporate change was neither a consolidation nor a merger. No fraud on the part of defendant is even suggested. Defendant is certainly not a reincarnation of the Riverside Mortgage Company. After the guaranteed investment certificate owners stepped into the picture the organization and corporate structure of the Riverside Mortgage Securities Company was not dictated by the Riverside Mortgage Company nor its stockholders. The guaranteed investment certificate owners were not acting with

the Riverside Mortgage Company but in opposition to it to protect their own interests. The majority of the board of directors were chosen by them and not by the old company. They owned a majority of the stock. They were not creditors of the old company, as found by the court, but beneficiaries under the trust. They did not buy the *corpus* of the trust from the old company but merely changed their beneficial ownership of it under the trust into corporate ownership by defendant in which they were preferred stockholders. The new company is not carrying on the business of the old but is merely liquidating its own affairs. The old company is conducting its own business and as far as the record here discloses, is solvent and could have responded to the judgment in this case had it been rendered against it. It is not a mere shell but is a going concern.

The only property of the Riverside Mortgage Company which was purchased by the Riverside Mortgage Securities Company was its office furniture and the apartment house furniture for which was paid $32,200. There is no evidence of the reasonable market value of this personal property. Neither is there any intimation that this purchase price was less than its fair market value unless such inference might arise from the bookeeping credit and debit entry of $73,000 when the title of the apartment house furniture passed from the Riverside Security Company to the Riverside Mortgage Company. This was really no sale at all, as those two corporations were for all practical purposes one and maintained separate corporate existences merely for the convenience of the Riverside Mortgage Company.

While there is uniformity of decision on the right of a creditor to sue a new corporation for the debts of the old under the conditions we have been considering, this uniformity disappears when it appears that stockholders in the old company have been given stock in the new company. While this situation is not important on this appeal, and as the present judgment must be reversed, citation of some of these authorities without further comment by us may be advisable. (See, *Strahm* v. *Fraser, supra; Central Georgia R. R. Co.* v. *Paul,* 93 Fed. 878 [35 C. C. A. 639] ; *Fogg* v. *Blair,* 133 U. S. 534 [10 Sup. Ct. 338, 33 L. Ed. 721] ; *Hollins* v. *Brierfield etc. Co.,* 150 U. S. 371 [14 Sup. Ct. 127, 37 L. Ed. 1113] ; *Kansas City S. R. Co.* v. *Guardian Tr. Co.,* 240 U. S.

166 [36 Sup. Ct. 334, 60 L. Ed. 579]; *Alberger Cons. Co.* v. *United Water etc. Co.,* 87 Kan. 843 [126 Pac. 1087]; *Skirvin Operating Co.* v. *Southwestern Elec. Co.,* 71 Okl. 25 [174 Pac. 1069, 15 A. L. R. 1104]; *Geo. E. Warren Co.* v. *A. L. Black Coal Co.,* 85 W. Va. 684 [102 S. E. 672, 15 A. L. R. 1083]; *Wolff* v. *Shreveport etc. Co.,* 138 La. 743 [70 So. 789, L. R. A. 1916D, 1138]; *Male* v. *Atchison etc. Co.,* 230 N. Y. 158 [129 N. E. 458, 15 A. L. R. 1098]; *Davis* v. *Hemming,* 101 Conn. 713 [127 Atl. 514, 39 A. L. R. 133]. See, also, note, 15 A. L. R. 1112 et seq.)

 It seems to be established by well-considered authorities, some of them already cited, that where the sale is made in good faith by the old corporation to the new, and for a sufficient consideration, and the new corporation leaves with the old sufficient assets with which to pay its debts, a creditor of the old corporation cannot collect his debt from the new. This rule is thus stated in *American Railway Express Co.* v. *Commonwealth,* 190 Ky. 636 [228 S. W. 433, 30 A. L. R. 543]:

"It is equally well settled that when the sale is a *bona fide* transaction, and the selling corporation receives money to pay its debts, or property that may be subjected to the payment of its debts and liabilities, equal to the fair value of the property conveyed by it, the purchasing corporation will not, in the absence of a contract obligation or actual fraud of some substantial character, be held responsible for the debts or liabilities of the selling corporation. Many illustrative cases fully supporting these propositions may be found in volume 5, Thompson on Corporations, section 6517; 7 R. C. L. 180; 10 Cyc. 307; notes in 11 L. R. A. (N. S.) 1119; 32 L. R. A. (N. S.) 616; 47 L. R. A. (N. S.) 1058."

This question was before the Supreme Court of California in *Atkinson* v. *Western D. Syndicate,* 170 Cal. 503 [150 Pac. 360], where it was said:

"Some reference should also be made to another rule relied on by the appellant and declared in some of the cases cited by him. It is well settled that 'if the stockholders of a corporation organize another corporation, and transfer all of the assets of the former to the latter, without paying the debts of the former, the transfer, irrespective of the actual intention of the parties, constitutes a fraud on the creditors

of the old corporation, and the new corporation is liable in equity for the debts of the old to the extent of the assets received by it'. (2 Clark & Marshall on Private Corporations, sec. 342i; *Hibernia etc. Co.* v. *St. L. & N. O. Transp. Co.*, 13 Fed. 516.) Such transfer is not, however, necessarily fraudulent where the grantor retains substantial assets or where a full and adequate consideration is paid by the transferee. (2 Clark & Marshall on Private Corporations, sec. 342i.) There was evidence in this case which authorized the court to conclude that the conveyances complained of came within the exception. Referring specifically to the transfer against which the most serious attack is directed, i. e., that to the Golden Gate Tile Company, there was evidence that the Crushed Rock Company still retained assets of considerable value. And, as we have already pointed out, the court was warranted in finding that a consideration of over fourteen thousand dollars had been paid for this conveyance —a consideration which in the absence of evidence to the contrary the court had a right to take to be equal to the value of the property transferred.''

In the instant case the evidence shows that the Riverside Mortgage Securities Company paid the Riverside Mortgage Company $32,200 for personal property. There is no showing that anyone other than plaintiffs had any claim against the Riverside Mortgage Company. The $32,200 paid to it for the personal property was more than sufficient to liquidate plaintiffs' claim. In the absence of evidence to the contrary, it may be assumed to be an adequate consideration. Under these facts, and the rule of law just considered, the judgment here cannot be sustained.

The attempted appeal from the order denying the motion for new trial is dismissed. The judgment is reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 31, 1938, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 2, 1938.