**ACTON v. WASHINGTON TIMES CO.**

No. 5362.

District Court, D. Maryland.

Sept. 24, 1935.

Walter L. Green, of Hyattsville, Md., and Lansdale G. Sasscer, of Upper Marlboro, Md., for plaintiff.

Wallace & Hammond, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a libel action which comes before the court for the second time on defendant's motion to quash the writ of summons, under the following circumstances: The suit was originally filed on February 6, 1934, by a resident of Prince George's county, Md., against the Washington Times Company, a New York corporation, the publishers of two daily newspapers, the Washington Times and the Washington Herald. It was originally instituted in the circuit court for Prince George's county, but removed to this court in conformity with the removal statute. The service of process was had in Prince George's county upon one A. C. Fjelstad, a newspaper reporter employed by the defendant company to report news for it in that locality. On motion being filed to quash the service, this court sustained the motion on the ground that although the defendant company was doing business in Maryland, nevertheless the reporter who was served was not a proper party upon whom service might be had under the Maryland law. Acton v. Washington Times Company (D. C.) 9 F. Supp. 74. As a result of this first decision, service was reissued, and on December 25, 1934, it was had on one C. Dorsey Warfield, whom the plaintiff believed at that time to be the business manager of the defendant company, but that company has again filed a motion to quash the writ of summons on the ground that this court is without jurisdiction, alleging that it (the defendant) was not at the time of this second service regularly doing business, or regularly exercising any of its franchises in the state of Maryland, nor did it then have a resident agent, officer, or other persons in its employ within the state of Maryland. On the hearing to quash this second service, the following material facts were undisputed:

Prior to September 23, 1934, the Washington Times Company, the defendant, was a completely owned subsidiary of the Star Holding Company, a Delaware corporation, which later became the American Newspapers, Inc. On or about the above-mentioned date, to this latter corporation all the assets of the Washington Times Company were transferred. On September 25, 1934, the Washington Times Company was dissolved pursuant to the laws of New York, the state of its incorporation, and since then Warfield, upon whom the second service was had, has been paid a salary by American Newspapers, Inc., as business manager for the Washington Times, newspaper, which it owned and published, previous to which time he had been employed in the same capacity by

the Washington Times Company. As a result of the disclosure of these facts, plaintiff, at the hearing on defendant's motion to quash the writ of summons, filed a motion for permission to amend his declaration so as to join the American Newspapers, Inc., as a party defendant in the present action. Thus, this motion, as well as defendant's motion to quash the writ of. summons, is now before the court.

There is no proof that the dissolution of the Washington Times Company between the date of the original filing of the present suit, namely, February 6, 1934, or of the service of the first writ of summons, February 7, 1934, and the date of the service of summons now in issue, namely, December 25, 1934, was actually brought about with the object of avoiding service in, or any liability that might grow out of, the present suit. Thus we come at once to the first and primary question raised by defendant's motion to quash the writ of summons, namely: Did the dissolution of the defendant company, prior to service of summons upon Warfield, result in placing that company beyond the jurisdiction of this court?

The answer to this question depends upon the character · of the dissolution under the New York law. The New York Stock Corporation Law, article 10, § 105, par. 8 (Consol. Laws, c. 59, Laws of 1923, c. 787), under which the voluntary dissolution took place, extends, without specifying how 'long, the time within which a corporation may be sued on causes of action arising prior to dissolution. That is to say, the corporate existence is continued for the purpose of winding up the company's business and for suing and being sued, limited only by the applicable statute of limitations. The language of the New York statute is as follows: "Such corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs, and may sue and be sued in its corporate name."

Under this provision it has been held that the corporation continues for the liquidation of assets, and the payment of debts and may sue and be sued in its corporate name. See Giovannangeli v. Levich & Pollach, Inc. (1929) 134 Misc. 245, 235 N. Y. S. 28. And its assets may be treated as trust funds in the hands of a transferee for the purpose of liquidating the corporation's debts. See United States v. Oscar Frommel & Bro. (C. C. A.) 50 F.(2d) 73.

■ Apart from the question of whether or not service may be had within a particular state where a corporation whose life is thus extended is sought to be reached, it is well settled⁰ that suits brought by or against a foreign corporation are not abated by its dissolution, unless such dissolution is complete in every respect; that is to say, the principle of abatement has no application where, by the decree of dissolution or by statute, the existence of the corporation is continued after dissolution for purposes of litigation. See Fletcher's Encl. of Corporations, vol. 17, §§ 8581 and 8583, and cases cited. Thus, for example, in Kelly v. International Clay Products Co., 291 Pa. 383, 140 A. 143, where a statute, under which a corporation of Delaware was. dissolved, provided that it should be continued as a body corporate for the purpose of prosecuting and defending actions brought by and against it but not for the purpose of continuing its business, it was held that a suit could be brought in Pennsylvania during such period of the corporation's life extension. We know of no decision of the Maryland Court of Appeals nor any federal decision which contradicts this rule. However, defendant in the present suit relies upon the following statement contained in United States to Use of Colonial Brick Corp. v. Federal Surety Co., 72 F. (2d) 961, page 964, a decision of the Circuit Court of Appeals of this circuit affirming a decision of this Court (5 F. Supp. 247): "The general rule is that when a foreign corporation'has been dissolved, no suit can be filed against it and no personal judgment against it can be obtained in the absence of a statute or of a public policy to the contrary in the state where the foreign corporation has been licensed to do business. Clark v. Williard, supra [292 U. S. 112, 54 S. Ct. 615, 78 L. Ed. 1160]; National Surety Co. v. Cobb (C. C. A.) 66 F. (2d) 323; Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U. S. 257, 47 S. Ct. 391, 71 L. Ed. 634. There is no such statute or public policy in the state of Maryland." From this, defendant argues that the question is controlled, not by the law of the place of dissolution of the corporation, but by the lex fori, that is, by the law of Maryland, and that the decision just referred to is binding authority to the ef-

fect that the present defendant cannot be sued, because there is no statute or public policy in Maryland so permitting.

This contention we are unable to accept, because upon careful examination of the case of United States v. Federal Surety Company, supra, it will be found that the facts of that case clearly distinguish it from those in the present suit, and that, therefore, the language above quoted from the court's opinion is not controlling here. That is to say, in the Federal Surety Company Case, the corporate dissolution involved was that of an Iowa company, pursuant to Iowa law, which was complete and absolute by decree, with no extension of the corporate life for any purpose. Thus, we do not interpret the above-quoted language as authority to the effect that there is no statute or public policy in the state of Maryland permitting a suit like the present one, where the life of the foreign corporation is expressly extended, for the purpose of suing and being sued, by the law of the state of the corporation's creation. Therefore, since the precise question here raised was not before the court in the Federal Surety Company Case, nor in the cases cited therein, nor has any case been found in which it was passed upon, it becomes necessary to turn to a consideration of the Maryland corporation laws, and to determine, first, whether there is any express provision in these laws permitting a suit under the circumstances of the present case, and, secondly, even if not, whether such suit is forbidden by implication contained in such laws.

The only provision of the Maryland Corporation Law which can fairly be said to relate directly to this precise point is the following (article 23, § 118, Maryland Code): "If any foreign corporation shall, after incurring liability in this State or after making any contract with a resident thereof, cease to do business or to have such resident agent or a president, director, manager or other officer herein, then and in such case suit may be brought in the county or city in which the plaintiff resides and process may be served upon any person in this State who was last a resident agent, president, director, manager or other officer of such corporation in this State; provided, however, that a copy of such process shall also be served on the president or some director of such foreign corporation wherever he may be found, and an affidavit of such service may be made by the person serving the same (whether he be a resident or a non-resident of this State) before any officer authorized by the laws of this State to take the acknowledgment of deeds to be recorded therein. And the affidavit showing such service and the time thereof shall be returned to the court in which the suit against such foreign corporation is pending. Nothing herein shall prevent or affect the issue of attachments against foreign corporations as now or hereafter allowed by law."

It is true that the use of the words "cease to do business," in this section, and the subsequent language, would seem to indicate that the provision was intended to relate primarily to situations where foreign corporations had not been dissolved, but had merely withdrawn from the doing of any business within the state of Maryland. However, we do not believe that a fair interpretation of the language of this provision excludes its application to a situation such as that involved in the present suit, namely, where the foreign corporation has ceased to do business within the state of Maryland by reason of a voluntary dissolution, because the contrary and more narrow interpretation would seem to invite escape in typical cases like the present, which, it is reasonable to presume, was never intended. That is to say, we see no reason for distinguishing, in applying this statute, between a case where the foreign corporation has withdrawn from activities within the state of Maryland but continues to do business elsewhere, and one where it has withdrawn because it has elected to be dissolved, provided the state of its creation imposes, as a condition of such dissolution, that it shall nevertheless remain subject to suit for the purpose of having its affairs liquidated.

Nor do we think that the provisions in this statute for supplementary service "on the president or some director of such foreign corporation wherever he may be found," or the making of an affidavit of such service by the person serving the same and the returning of such affidavit to the court in which the suit against the foreign corporation is pending, indicate that the statute is not capable of the broad construction which we are disposed to adopt. It is true that this language, just as the preceding language, seems to be intended to relate primarily to a corporation which was still alive in the full sense of the word, but which had merely withdrawn from the

state. But, again, we see nothing that prohibits its application to situations like the present one. By the statute's terms, it is not too late for plaintiff to comply with it. Furthermore, the Maryland law with respect to domestic corporations expressly meets a situation of this kind by extending the life of the corporation (see Maryland Code, art. 23, § 96), and we are loath, unless compelled by clear intent of the statute, to adopt a construction of the Maryland law which would place foreign corporations in a preferred position and afford an easy avenue of escape from just debts, not afforded domestic corporations. We do not believe that corporations should be allowed to escape service on such tenuous grounds.

Accordingly, defendant's motion to quash the writ of summons will be overruled. There remains to be considered the question whether plaintiff's motion for permission to amend its declaration so as to join the American Newspapers, Inc., as a defendant, should be granted. This motion is based upon the fact that the present sole defendant, the Washington Times Company, transferred all of its assets to a completely owned subsidiary, the American Newspapers, Inc., a Delaware corporation, which is doing business in the Maryland district and has a statutory resident agent therein.

While no proof of actual fraud exists in this transfer which occurred between the date of bringing the present action and the filing of this court's first opinion granting the motion to quash the first writ of summons, as a result of which the second summons here involved occurred, nevertheless the assets in the hands of the new company are subject to liability for the debts of the old company, including liability that might eventually arise out of something which occurred before the old company was dissolved, to wit, the situation in the present suit, although, of course, this court is not at this time in any sense attempting to pass upon the merits of the controversy. See United States v. Oscar Frommel & Bro., supra. Furthermore, the above is true irrespective of the fact that the transfer by the one corporation to the other specifically provided that it was made subject to the debts and the liabilities of the transferor, the Washington Times Company. Parenthetically, it may be pointed out that the transfer appears to have been essentially a paper transaction, because the employees of the Washington Times Company still maintained their same positions and, in fact, had no knowledge that their employer had changed. However, although it would thus be inequitable to allow the old company to deprive the present plaintiff of the ability to liquidate any judgment that might be obtained in the present suit, by merely transferring its assets to another company irrespective of the actual motive underlying such transfer, nevertheless we feel that plaintiff's motion should not be granted at this time because such is not necessary for full protection of plaintiff's rights. The American Newspapers, Inc., as such, had nothing to do with the statements constituting the alleged libel and indeed, for aught that appears, this corporation was not even in existence at the time these statements were made. Therefore, if the plaintiff is entitled to have the American Newspapers, Inc., joined as a party defendant in the present suit, such joinder would not and could not, strictly speaking, be for the purpose of making that company a party to the libel litigation as such, but merely for the sole purpose of conserving the assets of the other company until the libel litigation were consummated. Nor, in view of the character of this suit and the full extent of any possible recovery, can we assume that such protection is at the present time necessary or that if and when it is, it cannot and should not be through a separate equity proceeding for the purpose of restraining further transfer or probable dissipation of assets.

In view of our conclusion just stated on this latter point, it follows that the question of limitations need not be considered.

Both the defendant's motion to quash the writ of summons and the plaintiff's motion for permission to join the American Newspapers, Inc., as a party defendant, will be overruled. Leave will be granted to plaintiff to file the affidavit of supplementary service in accordance with article 23, § 118, Maryland Code.