Joseph P. KLOBERDANZ, and Employers Insurance of Wausau, a Wisconsin corporation, Plaintiffs,

v.

JOY MANUFACTURING COMPANY, a Pennsylvania corporation, and Web-Wilson Oil Tools, Inc., a corporation, Defendants.

Civ. A. No. 66–C–540.

United States District Court
D. Colorado.

Sept. 10, 1968.

Robert W. Hansen, Denver, Colo., for plaintiffs.

Zarlengo, Mott & Carlin, John C. Mott, Denver, Colo., for defendant, Joy Mfg. Co.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This is a diversity action arising out of an accident that occurred at an oil drilling rig near Kimball, Nebraska on February 6, 1964. The plaintiff, a workman, seeks damages for personal injury on a products liability theory. The product in question was manufactured in 1953 or before. The complaint has named as defendants Web-Wilson, Inc., the manufacturer of the allegedly defective part, and Joy Manufacturing Company, the alleged successor in interest to Web-Wilson. Web-Wilson has been dissolved. Its motion to dismiss the original and twice amended complaints as to it has been granted for lack of personal jurisdiction. Thus the only parties presently before this Court are Kloberdanz the plaintiff and Joy the defendant. The case is now before the Court on Joy's motion for summary judgment of dismissal of the third amended complaint. Briefs and depositions have been filed by both parties and the matter now stands submitted.

The essential facts are these: Web-Wilson, a California corporation, manufactured and sold through independent dealer outlets an item of heavy machinery for oil drilling operations called a "hydra-hook." An integral part of this piece of equipment is called the "top bail." The plaintiff alleges that on February 6, 1964 the top bail of a hydra-hook owned and used by Kloberdanz's employer, Don Rounds Drilling Company, broke. This caused the hydra-hook itself to fall to the ground and injure Kloberdanz. Kloberdanz also alleges that the hydra-hook was defective as a result of negligent manufacture by Web-Wilson.

Plaintiff's employer, Don Rounds, testified by deposition that he bought the hydra-hook and the top bail in 1953 or 1954 from American Pipe and Supply Company of Casper, Wyoming, and that both items had been in the possession and continuous use of his company from that time to the day of the accident in question. Don Rounds also testified that his company had had no dealings whatever with Joy Manufacturing Company in connection with either the hook or the top bail. In fact, he said that his company had had no dealings whatever with Web-Wilson. The top bail alleged to be defective was manufactured by Web-Wilson prior to 1953 and there is neither a claim nor evidence that Joy had anything to do with the manufacture, sale or distribution of the hook or top bail.

Plaintiff seeks to compel Joy to respond because of it being the successor to Web-Wilson. By an agreement dated February 8, 1960, Joy Manufacturing

Company acquired certain properties and assumed certain liabilities of Web-Wilson, Inc. This agreement is presently before this Court and the part here pertinent states that

"WHEREAS, Joy desires to acquire *certain* assets of Web Wilson, hereinafter designated, subject to *certain* liabilities, hereinafter designated, and Web Wilson desires to dispose of said assets subject to such liabilities on the terms hereinafter set forth;

NOW, THEREFORE, in consideration of the terms, covenants and conditions hereinafter set forth, the parties hereto mutually agree as follows:

1. On the date of closing, hereinafter set forth, Web Wilson will assign and transfer to Joy by appropriate instruments of assignment and transfer all of the property and assets of Web Wilson of whatsoever nature, kind and description and wheresoever situate, including the right to use the name 'Web Wilson Oil Tools, Inc.', Web Wilson or any part or combination thereof as a division or subsidiary of Joy or as a trade name or trademark, escept the following:

(a) Land,

(b) Buildings and Improvements

(c) Automobiles,

(d) Deposit for redemption of Web Wilson Stock per agreement dated February 14, 1958,

(e) Accounts Receivable, Tractor Division,

(f) Sales Agents' contracts and employment contracts,

(g) License agreements with Mannesmann-Trauzl dated August 1, 1959, and FIP dated June 1, 1956.

2. On the date of closing, Joy shall

(a) Pay to Web Wilson the sum of $1,019,637 *cash;* but Joy will be reimbursed at the closing for any reduction after December 31, 1959, in liabilities to be retained by Web Wilson.

(b) Assume and become liable for those liabilities and obligations of Web Wilson listed on Exhibit J attached hereto as the same shall exist immediately prior to the closing. Joy shall execute and deliver to Web Wilson at the closing such instrument or instruments as may reasonably be deemed necessary or advisable by counsel for Web Wilson to signify the assumption of such liabilities and obligations." (Emphasis added.) Pp. 1–2.

"Schedule J
Liabilities and Obligations of
Web Wilson to be Assumed
by Joy

A. Balance sheet liabilities of the class designated on Exhibit A attached to that certain agreement dated February 8, 1960, as follows:

(1) Accounts Payable Trade

(2) Contracts Payable—Equipment

(3) Payroll Taxes Deducted

(4) Payroll Taxes Accrued

(5) Accrued Wages & Compensation

(6) Accrued Insurance & Interest

(7) Employee Trust

B. The following other liabilities and obligations:

(1) Outstanding purchase orders for Web Wilson products.

(2) Outstanding obligations for supplies and components to be used in the manufacture of Web Wilson products.

(3) Sublease of Houston Sales Company dated October 1, 1959, covering warehouse space in Houston, Texas, at monthly rental of $175 per month."

William Albert Wilson, president of Web-Wilson at the time of the sale, stated in his deposition that although Web-Wilson ceased manufacturing and selling oil field equipment after the sale, it did continue to function as a corporation by leasing its buildings and investing the one million dollars it received from the sale. Mr. Wilson also stated that Web-Wilson, Inc., was dissolved and liquidated as a corporation under the laws of

the State of California in December, 1960, and that it ceased to exist as a corporation after that date. Mr. Wilson further testified by deposition that Web-Wilson and Joy were strangers and neither himself nor any of his officers ever acquired any interest in Joy. James P. Packer, Secretary of Joy, stated in his answer to the plaintiff's interrogatories that his company has never used the name, "Web-Wilson Oil Tools, Inc.," and has only used the name "Web-Wilson" as a trademark on 13 tools since February 8, 1960, the date of the sale.

The chronological order of the pertinent occurrences in this case are:

(1) Prior to 1953—Hydra-hook and top bail in question was manufactured by Web-Wilson, Inc.

(2) 1953 or 1954—Hydra-hook and top bail in question was purchased by Kloberdanz's employer, Don Rounds Drilling Company.

(3) Feb. 8, 1960—Date of agreement whereby Joy purchased certain assets of Web-Wilson.

(4) December, 1960—Dissolution of Web-Wilson.

(5) Feb. 6, 1964—Accident in question occurred.

It is clear from the foregoing agreement and from the other undisputed facts that Joy did not agree to assume liability for Web-Wilson's torts. The only basis for Kloberdanz's products liability claim against Joy Manufacturing Company arises from Joy's acquisition of certain assets and its assumption of certain liabilities of Web-Wilson. Kloberdanz asserts that Joy by its purchase of the bulk of Web-Wilson's assets and the assumption of certain of its liabilities thereby assumed by operation of law liability for torts committed by Web-Wilson prior to the date of the purchase; that even if there was neither a strict merger nor consolidation, there

was a de facto merger or consolidation which had this legal consequence.

The question then is whether Joy involuntarily and as a matter of law assumed the alleged tort liability of Web-Wilson.

■ Since this is of course a diversity case, the choice of law is governed by Colorado's conflict of laws rules. Klaxon Co. v. Stentor Electric Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Colorado courts have followed the principle that the law of the place where a contract is made governs its nature, validity and interpretation.[1] Since the agreement of February 8, 1960 was made and was also to be performed in California it follows that California law governs.

■ Under the law of California and most other jurisdictions, where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts. Pierce v. Riverside Mortgage Securities Co., 25 Cal.App.2d 248, 77 P.2d 226 (1938); Colorado Springs Rapid Transit Ry. Co. v. Albrecht, 22 Colo.App. 201, 123 P. 957 (1912); American Hospital & Life Ins. Co. v. Kunkel, 71 N.M. 164, 376 P.2d 956 (1962); 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7122 (1961 Rev. Vol.).

Although the general rule speaks of a transfer of *all* a corporation's assets, the emphasis should be on whether the sale was a bona fide one involving the

---

1. Gossard v. Gossard, 149 F.2d 111 (10th Cir.1945); Cockburn v. Kinsley, 25 Colo. App. 89, 135 P. 1112 (1913); Des Moines Life Assn. v. Owen, 10 Colo.App. 131, 50 P. 210 (1897). The Colorado courts have not as yet expressly adopted the modern theory that calls for an examination and judicial weighing of the most significant contacts.

payment of money or property to the selling corporation whereby it can respond in actions like the present one.[2] The transfer of assets in this case was made for a good and valuable consideration (cash in excess of one million dollars) and there is no hint of fraud. Therefore, it follows that unless the sale of Web-Wilson's assets to Joy falls into one of the four recognized exceptions, the general rule would apply and thus there would be no basis for this suit against Joy.

■ As previously indicated, there is no express agreement of assumption nor did Joy impliedly agree to assume liability for the torts of Web-Wilson. Exhibit J, an attachment to the agreement, designated the liabilities of Web-Wilson that Joy was to assume. Since Web-Wilson's liability for its torts was not included even by implication in Exhibit J, it follows that the parties intended that Web-Wilson was to retain that liability.

■ Nor do we find a consolidation or merger. *Fletcher* defines and distinguishes a merger and consolidation by stating that

"Strictly speaking, a consolidation signifies such a union as necessarily results in the creation of a new corporation and the termination of the constituent ones, whereas a merger signifies the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises and powers of a merged corporation." 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7041, at 6 (1961 Rev. Vol.).

The sale of certain assets of Web-Wilson to Joy did not result in a new corporation being created, and it did not bring about an absorption of Web-Wilson, Inc.

by Joy. Both companies were strangers to each other before the sale and remained so after the sale. Joy used the name "Web-Wilson" only as a trademark in connection with a limited number of tools. Web-Wilson continued its corporate existence, until its liquidation many months after the sale. It leased its buildings and invested its capital. None of the officers of Web-Wilson had any interest in or became officers of Joy Manufacturing Company. The two corporate entities were completely separate and distinct before and after the sale. We hold therefore that the criteria applicable to merger or consolidation were not satisfied.

■ Nor can the buyer be said to be a mere continuation of the seller. Web-Wilson, Inc. continued to exist after the sale, and there was no common identity of stock, directors, officers or stockholders between Joy and Web-Wilson. This exception covers a re-organization of a corporation. 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7122, at 194–96 & nn. 41–43 (1961 Rev. Vol.). There is no evidence of this here.

No allegation of fraud has been made or even inferred and so this exception is also inapplicable.

■ Since the four exceptions are not applicable to the facts of this case, the general rule that where one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor governs the outcome of Joy's motion for summary judgment of dismissal of the complaint against it.

■ Kloberdanz at last asserts that even though Joy did not strictly assume the liability of Web-Wilson for its torts, it did assume such a liability in law be-

---

**2.** The California Court in *Pierce*, supra, so interpreted the rule when it quoted as follows from American Railway Express Co. v. Commonwealth, 190 Ky. 636, 228 S.W. 433, 30 A.L.R. 543 (1920):

"It is equally well settled that when the sale is a bona fide transaction, and the selling corporation receives money to pay its debts, or property that may

be subjected to the payment of its debts and liabilities, equal to the fair value of the property conveyed by it, the purchasing corporation will not, in the absence of a contract obligation or actual fraud of some substantial character, be held responsible for the debts or liabilities of the selling corporation." 77 P.2d at 231.

cause the sale of assets resulted in a de facto merger or consolidation. In support of this, he cites the following statement from *Fletcher:*

> "[I]t has been held that a transfer of all its property by one company to another, together with the cessation of doing business by the selling company, makes the purchasing corporation liable for torts of the selling company, apparently upon the theory that such a sale is a consolidation." 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7123, at 197–98 & n. 49 (1961 Rev. Vol.).

The cases noted in *Fletcher* hold that the purchasing company is liable for the torts of the selling company when (1) there is no tangible consideration given to the selling corporation which could be made available to meet creditors' claims, (2) there is a mixture of officers and stockholders between the two corporations, or (3) the transaction is tainted with fraud.[3] It thus appears that the principle advanced here is a species of tracing of assets in equity. None of these elements are present in Web-Wilson's sale of assets to Joy Manufacturing Company. Both companies were strangers and dealt at arms length before and after the sale. Adequate consideration was given by Joy for Web-Wilson's assets, over one million dollars in cash; there was no mixture of officers or stockholders; and there was not even a hint of fraud. The facts in this case simply will not support Kloberdanz's claim of either a de facto merger or consolidation.

It follows that there is no basis for plaintiff's claim against Joy Manufacturing Company and thus Joy's motion for summary judgment is granted. The

---

3. Malone v. Red Top Cab Co. of Los Angeles, 16 Cal.App.2d 268, 60 P.2d 543 (1936) (The Court held that where one corporation takes all the property of another corporation without any cash, stock, bonds or other property passing to the selling corporation which could be made available to meet a creditor's claim, the purchaser will be required to meet the seller's debts and obligations.); Chorpenning v. Yellow Cab Co. of Camden, 113 N.J.Eq. 389, 167 A. 12 (1933) (The Court held that the transfer of all of the physical property of the Public Service Cab Company to Yellow Cab Company was without consideration, and therefore fraudulent and void under a New Jersey statute.); Ledbetter v. Sunflower State Oil Co., 96 Kan. 636, 152 P. 763 (1915) (Cudahy Refining Company's motion to dismiss the complaint was denied by the trial court and Cudahy appealed. The complaint alleged that for some time prior to the injury in question there had been a community of interest between Sunflower State Oil Company and Cudahy, that after the injury occurred Sunflower sold and transferred all its capital stock and assets to Cudahy, and that Sunflower has ceased to do business and has no property. In upholding the sufficiency of the complaint as against Cudahy, the Kansas Supreme Court stated that "[w]e think, without question, the petition states a cause of action," and it intimated very strongly that a merger had occurred. 152 P. at 764.); Acton v. Washington Times Co., 12 F.Supp. 257 (D.Md.1935) (The Court denied the plaintiff's motion to join the purchasing corporation, American Newspapers, as a defendant. When this libel suit was filed against Washington Times Company, it was a completely owned subsidiary of American Newspapers, Inc. Within seven months after the suit was filed, Washington Times Company transferred all its assets to its parent American Newspapers, Inc., ceased to do business, and was dissolved. Washington Times received no tangible consideration for the transfer of its assets; it received only its capital stock which was cancelled pursuant to the dissolution. The Court held that although the assets in the hands of the new company are subject to liability for the debts of the old company, joinder of American Newspapers would not and could not, strictly speaking, be for the purpose of making that company a party to the libel litigation as such, but merely for the sole purpose of conserving the assets of the old company until the libel litigation were consummated.); Marvin v. First National Bank of Aurora, Ill., 10 F.Supp. 275 (N.D.Ill.1935) (This case involved the conversion of trust funds by a bank president. The Court held that the old bank could not, in this situation, transfer to the new bank any right superior to that of the defrauded plaintiffs, and that the plaintiffs could therefore recover assets transferred to the new bank.).

 

complaint is therefore dismissed, and the Clerk is directed to enter judgment on the said complaint in favor of the defendant Joy Manufacturing Company and against the plaintiff Kloberdanz.