David A. FEHL, Plaintiff,

v.

S. W. C. CORPORATION, a New York Corporation, W. B. McGuire Co., Inc., a New York Corporation, and J. D. Handling Systems, Inc., a New York Corporation, Defendants.

Civ. A. No. 76–335.

United States District Court, D. Delaware.

April 19, 1978.

Arthur Inden and Frederick W. Iobst, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

John J. Schmittinger and William A. Denman, of Schmittinger & Rodriguez, Dover, Del., for defendant, W. B. McGuire Co., Inc.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

The factual background of this diversity case is found in this Court's earlier opinion reported at 433 F.Supp. 939 (D.Del.1977). Briefly, W. B. McGuire & Company, Inc. ("McGuire"), a New York corporation, is one of three corporate defendants. The plaintiff was injured in June, 1975, while he was operating an ice-cubing machine sold to plaintiff's employer by the Gifford-Wood Company ("Gifford-Wood") in 1946. Sometime after the sale, Gifford-Wood sold its ice product line to Columbia Precision Instruments, Inc. ("Columbia Precision"). In 1971, McGuire purchased from Columbia Precision its Hudson, New York, plant, including all assets relating to the ice product line. Included among the assets were the rights to manufacture and sell an ice-cubing machine and other ice handling tools and to use the Gifford-Wood name on the products for a period of five years. In February, 1975, McGuire sold the ice product line to J. D. Handling, Inc., also a defendant in this case.

In November, 1976, defendant McGuire brought a Motion to Dismiss for Lack of Jurisdiction on the ground that substituted service of process on it under 8 *Del.C.* § 382 was improper and ineffective.[1] On June 7, 1977, this Court granted McGuire's Motion to Dismiss.[2] The Court concluded that process could not be served on McGuire under 8 *Del.C.* § 382, since plaintiff's cause of action did not "arise or grow out of" business transacted in Delaware. The Court suggested that personal jurisdiction might be asserted over a successor corporation in connection with the acts of a predecessor on two theories, a "corporate theory" or a "tort theory", and concluded that plaintiff had not met his burden of proof under either.

Subsequent to the issuance of the Court's opinion and order dismissing McGuire as a defendant, the plaintiff filed a Motion for Reargument and For Leave to Take Further Discovery. Plaintiff argued that he had not had a fair and complete opportunity to present evidence on all of the matters which the Court deemed relevant in reaching its decision. Plaintiff also pointed out that Charles W. Mellyn, an employee of McGuire, had previously been employed by Gifford-Wood. McGuire acknowledged that it had recently learned that Mellyn and another McGuire employee, Michael Lewicki, had previously been employed by Gifford-Wood. Since the Court had relied in

---

1. 8 *Del.C.* § 382 provides in part:

    "Any foreign corporation which shall transact business in this State . . . shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit or proceeding against it in any state or federal court in this State arising or growing out of any business transacted by it within this State. . . ."

2. *Fehl v. S. W. C. Corp.*, 433 F.Supp. 939 (D.Del.1977).

part on McGuire's previous representation that, to the best of its knowledge, none of its past or present employees were employees of Gifford-Wood, see, 433 F.Supp. at 948, the Court concluded that it was appropriate to grant plaintiff an opportunity for further discovery. Accordingly, the Court ordered that the plaintiff's Motion for Reargument and the Court's previous Order of Dismissal of McGuire be held in abeyance until further order. The plaintiff was permitted to take the depositions of Mellyn and Lewicki, and ordered to report to the Court on any facts discovered which might be pertinent to consideration of the Motion for Reargument.

Following the Court's Order, plaintiff has deposed Mellyn, Lewicki, and Herbert Mastin, acting general manager of the McGuire plant in Hudson, New York. In addition, plaintiff has received responses to supplemental interrogatories and to a request for production addressed to McGuire. Plaintiff and McGuire have filed submissions with the Court, and both have indicated that they do not intend to file any additional materials relating to the jurisdictional issue.

Based on examination of the material submitted by the parties, the Court concludes that plaintiff's Motion for Reargument should be denied and that the Court's previous Order of Dismissal of McGuire should no longer be held in abeyance. The facts which plaintiff has uncovered in the course of discovery are insufficient for the Court to conclude that there can be jurisdiction over McGuire under either theory discussed in the earlier opinion.

■ The Court stated in its earlier opinion that jurisdiction over McGuire might be possible if, by acquiring the assets of the ice product line which originally belonged to Gifford-Wood and taking over the ice product manufacturing operation, McGuire became the present-day embodiment of Gifford-Wood (the "corporate theory"). The Court noted that plaintiff had presented no evidence as to the circumstances under which Columbia Precision acquired the ice product line from Gifford-Wood. Furthermore, the evidence did not indicate that the transfer of the ice product line from Columbia Precision to McGuire could constitute a de facto merger or continuation. Thus, the Court refused to attribute to McGuire the business transacted in Delaware by its predecessors and to hold that McGuire was amenable to service of process.

Plaintiff has submitted certain evidence which suggests that several Gifford-Wood employees were later employed by McGuire. Michael Lewicki, who held a variety of positions with Gifford-Wood, was hired by Columbia Precision and eventually held an "inside" sales position with McGuire. (Lewicki Deposition, pp. 1, 6–8). Lewicki and Mellyn stated in deposition testimony that several of the former Gifford-Wood or Columbia Precision foremen may have been hired by McGuire. (Lewicki Deposition, p. 11; Mellyn Deposition, pp. 81–83). Some shop employees from Columbia Precision were hired by McGuire. (Mellyn Deposition, pp. 81–83). In addition, Mellyn, who worked as manager of manufacturing for Gifford-Wood between 1960 and 1965, served as vice-president, and a general manager of McGuire between 1970 and 1977. (Mellyn Deposition, pp. 3–5, 16–26). Mellyn obtained approximately 1% of the stock of Gifford-Wood through a stock-option plan initiated in 1964, but sold it for cash when Gifford-Wood became a subsidiary of Stowe Woodward in 1965. (Mellyn Deposition, pp. 24–25, 55–56, 99–100). While Mellyn was employed by McGuire, he became a 20% shareholder in McGuire. (Mellyn Deposition, pp. 14–15).

The Court concludes that the fact that several Gifford-Wood and Columbia Precision employees were hired by McGuire is not sufficient evidence that McGuire was a continuation of either company. According to Lewicki, McGuire hired approximately 95% new employees in connection with the acquisition of the Hudson, New York, plant from Columbia Precision. (Lewicki Deposition, pp. 11–12). None of the employees who remained with Gifford-Wood's successors, except Mellyn, was an officer, director or shareholder of Gifford-Wood or any of the successor corporations. Mellyn sold his

Gifford-Wood shares and left Gifford-Wood approximately seven years before McGuire acquired the ice product line. (Mellyn Deposition, pp. 25–27, 55–56). Mellyn never worked for Columbia Precision, but instead worked for two other companies, including his own, before he joined McGuire. (Mellyn Deposition, pp. 18, 21). Neither Mellyn nor Lewicki was directly involved with the ice product line at Gifford-Wood, although both eventually gained some familiarity with it. (Mellyn Deposition, pp. 31–35, 100; Lewicki Deposition, pp. 9–10, 22–23, 40–43).

The newly acquired evidence does not change this Court's original conclusion that Columbia Precision retained no ownership or management interest in McGuire and that the acquisition of the ice product line by McGuire was an arms-length cash sale. The deposition testimony indicates that Columbia Precision continued its corporate existence following the acquisition by McGuire (Mellyn Deposition, pp. 85–86), bolstering the conclusion that McGuire cannot be regarded as a continuation of Columbia Precision or Gifford-Wood. *Compare, Kloberdanz v. Joy Manufacturing Co.,* 288 F.Supp. 817, 821, (D.Colo.1968). McGuire never took advantage of its right to use the Gifford-Wood name on the ice machinery which it produced, but instead affixed its own insignia. (Mellyn Deposition, pp. 89–91; Lewicki Deposition, p. 41). Under the standards discussed in this Court's prior opinion, the evidence does not indicate that McGuire can be regarded as the embodiment of the Gifford-Wood corporate entity.[3]

As an alternative theory, the Court suggested in its earlier opinion that under certain circumstances a successor corporation might have a duty to warn customers of defects existing in products sold by a predecessor corporation (the "tort theory"). The Court stated:

"[I]f plaintiff could establish that McGuire transacted business in Delaware related to the servicing of the Gifford-Wood ice-cuber involved in the accident, traded on the name and reputation of the Gifford-Wood ice-cubers in Delaware, or gained knowledge of specific defects in the machine through business transacted in Delaware, then the 'arising out of' requirement of § 382 could be satisfied." 433 F.Supp. at 949. The Court concluded that plaintiff had failed to meet its burden of proof under this theory.

The additional evidence which plaintiff has obtained does not bolster its case under the "tort theory". Mellyn testified on deposition that McGuire assumed no obligations to service the Gifford-Wood ice machinery. (Mellyn Deposition, pp. 101–102). It does not appear that McGuire traded on the name and reputation of Gifford-Wood to any significant extent. McGuire obtained no customer lists from Columbia Precision, although Lewicki was apparently familiar with the ice product customers. (Mellyn Deposition, p. 75). As noted *supra,* after it acquired the ice product line, McGuire began to affix its own insignia to the ice products. (Mellyn Deposition, pp. 89–91; Lewicki Deposition, p. 41).

Finally, it cannot be said that McGuire acquired any actual or constructive knowledge of defects in the Gifford-Wood ice machinery as a result of transacting business in Delaware. Lewicki, who was the employee in charge of receiving complaints about the ice product line, recalls receiving only one complaint about an ice machine and no complaints about ice-cubing machines in particular. (Lewicki Deposition, pp. 37–38, 41–42). The one complaint occurred prior to McGuire's acquisition of the ice product line. There is no indication whether the complaint originated in Delaware or elsewhere. Mellyn recalls no complaints about the ice machinery. (Mellyn Deposition, pp. 93–97).

The additional evidence presented by plaintiff is insufficient for this Court to

---

**3.** The Court noted in its original opinion that the plaintiff had presented no evidence as to the circumstances under which Columbia Precision acquired the ice product line. The new evidence submitted by plaintiffs adds very little information about the acquisition. The retention of a few Gifford-Wood employees by Columbia Precision is not sufficient to support the conclusion that the latter was a continuation of the former.

find that McGuire is amenable to service of process under 8 *Del.C.* § 382. Plaintiff's Motion for Reargument will be denied. The Court's Order of Dismissal, dated June 7, 1977, will no longer be held in abeyance.