Robert RICCIARDELLO

v.

**J.W. GANT & COMPANY, et al.**

**Civ. No. H-88-338 (PCD).**

United States District Court,
D. Connecticut.

July 7, 1989.

Peter Luria, West Hartford, Conn., for plaintiff.

Patricia M. Gaug, Pullman, Comley, Bradley & Reeve, Bridgeport, Conn., Andrew Roraback, Linda Randell, Wiggin & Dana, New Haven, Conn., John S. Rosania, Robert G. Gilligan, Clark, Mayo, Gilligan & Zito, Wethersfield, Conn., for defendant.

Kenneth F. Berg, David A. Genelly, Fishman & Merrick, P.C., Chicago, Ill., pro hac vice.

## RULING ON MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff, Robert Ricciardello, brings this action alleging violations of federal and state securities laws in the sale to him of the securities of three corporations: API Enterprises, Inc.; Mirtone International; and VTL Ventures Corporation. Defendants include Fred Ricciardello, an individual broker, and three brokerage firms—Michelin & Co.; J.W. Gant & Co.; and David–Maxwell, Inc.[1]

Plaintiff alleges that between May and November 1986 he purchased securities of API, Mirtone and VTL through Michelin, which (a) did not register them in Connecticut as required by Conn.Gen.Stat. § 36–485; (b) did not disclose that it was a market-maker in the stocks; (c) used plaintiff's account to make a market in the stocks; and (d) sold the stocks to him in spite of the knowledge of Ricciardello, the

---

1. API and Fred Ricciardello have been defaulted for failure to plead. Plaintiff was unable to effect service on defendant Michelin, as to which the action was dismissed without prejudice. Mirtone and VTL were also named as defendants, but their motions for summary judgment have been granted in a previous ruling. *See* Ruling on Plaintiff's Motion for Extension of Time to File Response and Motion to Reconsider (Feb. 28, 1989).

Michelin employee handling the account, that the stocks were unsuitable for plaintiff's stated investment needs. Plaintiff further claims that Michelin subsequently transferred its assets to David–Maxwell and Gant, which continued Michelin's business with the same customer accounts and thereby assumed Michelin's liabilities. Complaint, ¶¶ 21–23. Plaintiff seeks damages and/or rescission for alleged violations of Section 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5 issued thereunder; Sections 12(2) and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l* (2), 77q; and Conn. Gen.Stat. § 36–498(a). Defendants Gant and David–Maxwell move to dismiss for failure to state a claim or, in the alternative, for summary judgment.

*Motion to Dismiss/Summary Judgment*

Dismissal under Rule 12(b)(6), Fed.R. Civ.P., is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Well-pleaded allegations of fact must be taken as true and the complaint as a whole be viewed in the light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In contrast, a motion for summary judgment, Rule 56(e), Fed.R.Civ.P., affords the allegations of plaintiff's pleadings no deference. In the absence of a genuine issue of fact as to an element essential to its opponent's case, the non-moving party must go beyond the pleadings and, by affidavit or other materials permitted under the rule, "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Rule 56(e). However, all ambiguities must be resolved and all reasonable inferences must be drawn against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

### A. *J.W. Gant*

Defendant Gant purchased all or most of the assets of Michelin under a written agreement executed December 18, 1986. Affidavit of Sandra Solomon, Exhibit A (Agreement). As a result, plaintiff's account and those of other investors were transferred from Michelin to Gant in January 1987. Affidavit of Sandra Solomon, ¶ 16. Gant contends that it neither expressly nor impliedly assumed Michelin's liabilities, that the agreement was neither a merger nor consolidation of the two firms, nor a continuation of Michelin's business, and that Gant had no knowledge of or participation in Michelin's allegedly fraudulent acts. *See* Affidavit of Sandra Solomon, ¶¶ 5, 7, 9.

Gant argues that plaintiff's allegation that Gant is Michelin's corporate successor is merely a legal conclusion which need not be taken s true for purposes of Rule 12(b)(6) and, in any event, is insufficient to plead plaintiff's fraud claims with the particularity required by Rule 9(b). It is unnecessary to discuss these arguments because plaintiff has not met his burden in opposing summary judgment.

Undisputedly, Gant purchased some or all of Michelin's assets in December 1986, shortly after the securities transactions on which plaintiff's claims are based. *See* Complaint, ¶ 21; Gant Local Rule 9(c) Statement, ¶¶ 1, 2. The complaint alleges Gant's liability only as Michelin's successor, not as a participant in these transactions. Gant contends that, as a matter of law, it has not succeeded to any liability of Michelin to plaintiff.

Under the general rule,[2] a corporation which purchases all the assets of another

---

2. Gant contends that Colorado law applies to the issue of successor liability because the asset purchase agreement is governed by Colorado law. *See* Agreement, ¶ 9.1. However, plaintiff was not a party to the agreement and bases his claim on the overall circumstances of the relationship between the two corporations. His claims may perhaps be better characterized as attempts to extend the federal and Connecticut statutes to reach Gant; thus, they are governed

company does not become liable for the debts and liabilities of its predecessor unless

(1) the purchase agreement expressly or impliedly so provides;

(2) there was a merger or consolidation of the two firms;

(3) the purchaser is a "mere continuation" of the seller; or

(4) the transaction is entered into fraudulently for the purpose of escaping liability.

*Kloberdanz v. Joy Mfg. Co.,* 288 F.Supp. 817, 820 (D.Colo.1968), citing 15 Fletcher, *Cyclopedia of Law of Corporations,* § 7122 (1961 rev. vol.); *accord Ladjevardian v. Laidlaw–Coggeshall, Inc.,* 431 F.Supp. 834, 838 (S.D.N.Y.1977); *see also Fletcher,* 15 Cyc. Corp., §§ 7122–23 (1983 Perm. ed.). The first exception is inapplicable because the agreement expressly excluded Gant's liability for debts or liabilities of Michelin. *See* Agreement, ¶ 1.3, 2; *compare Kloberdanz,* 288 F.Supp. at 821 (no express or implied assumption of liability). Moreover, because Gant operated its own securities business prior to the transfer of assets, it was not formed for the purpose of reorganizing Michelin and shares no common officers, directors, stock, or stockholders with Michelin. Gant is not a "mere continuation" of Michelin's corporate identity. *See Ladjevardian,* 431 F.Supp. at 839 (continuation envisions common identity and persistence of corporate entity itself); *Kloberdanz,* 288 F.Supp. at 821. Plaintiff contends that there are genuine disputes of fact material to the "merger/consolidation" and "intend to defraud" exceptions to the general rule.

### 1. *Merger/Consolidation*

"A merger contemplates the 'absorption of one corporation by another which retains its name and corporate identity with the added capital, franchise, and powers of a merged corporation'.... A consolidation envisions the joining together of the two corporations so that a totally new corpora-

tion emerges and the two others cease to exist." *Ladjevardian,* 431 F.Supp. at 838, quoting Fletcher, Cyc. Corp., § 704, at 6 (1961 rev. vol.). *See Arnold Graphics Indus., Inc. v. Independent Agent Center, Inc.,* 775 F.2d 38, 42 (2d Cir.1985).

"To find that a *de facto* merger has occurred there must be a continuity of the selling corporation, evidenced by the same management, personnel, assets, and physical location; a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and the assumption of liabilities by the purchaser."

*Id.* at 42, quoting *Ladjevardian,* 431 F.Supp. at 839. However, the rule has been expanded to impose the assumption of liability based on tort claims. Thus, "a transfer of all its property by one corporation to another, together with the cessation of doing business by the selling company, ... when (1) there is no tangible consideration given to the selling corporation which could be made available to meet creditors' claims; (2) there is a mixture of officers and stockholders between the two corporations; or (3) the transaction is tainted with fraud," warrants application of the rule. Fletcher, Cyc. Corp., § 7123 (notes omitted). *See also id.* at n. 4; *Kloberdanz,* 288 F.Supp. at 822 & n. 3 (collecting cases).

The merger exception does not apply to this case because plaintiff has not established either a continuity of stockholders or an inadequacy of consideration. The affidavit of defendant's president, Sandra Solomon, states that no Gant stock was used to purchase Michelin's assets. *See* Sandra Solomon Affidavit, ¶ 10. Moreover, no Gant stock has even been owned by any shareholder or principal of Michelin. *Id.,* ¶ 11. *Compare Dayton v. Peck, Stowe & Wilcox Co.,* 739 F.2d 690, 693 (1st Cir. 1984); *Ladjevardian,* 431 F.Supp. at 839 (purchase of assets involved no exchange of stock). Under the agreement, Gant

---

by federal and Connecticut law, respectively. It does not appear that the rules of corporate successor liability differ markedly among the three jurisdictions and, in any event, the result

reached here turns not on the resolution of the substantive law but on application of plaintiff's burden under Rule 56 to the record before the court.

agreed to pay a set amount, evidenced by a note, for Michelin's assets. Agreement, ¶ 3.1. Although the agreement also provides the note holder an option to purchase Gant stock at maturity, there is nothing to suggest that the option will be exercised or by whom. In addition, Michelin has not been shown to have been dissolved or to have ceased to exist as a distinct corporate entity. *See Dayton,* 739 F.2d at 693; *Ladjevardian,* 431 F.Supp. at 839; *Kloberdanz,* 288 F.Supp. at 821. At most, plaintiff has shown that Michelin no longer does business as a securities broker.

Plaintiff also has not demonstrated a genuine issue as to the adequacy of the consideration given by Gant for Michelin's assets. That Gant gave its note, rather than cash, does not do so. The note was in the amount of $250,000 plus the value of non-cash assets, less debit balances. ¶ 3. There is nothing to suggest that the note was a sham, not intended to be enforced or unenforceable, nor that Michelin's acceptance of the note left its creditors without a remedy, as Gant's obligation to make note payments could be attached. Accordingly, as a matter of law, no merger or consolidation could be found to have occurred.

### 2. *Fraud*

Plaintiff's claim that the asset transaction could be found to have been fraudulent is equally unavailing. The complaint alleges no fraud in connection with this transaction. If plaintiff purports to rely on fraud to impose successor liability upon Gant, he must plead with particularity facts from which fraud may be inferred. Rule 9(b), Fed.R.Civ.P.

Plaintiff's opposition to summary judgment does not remedy the defect in his pleadings. He simply has not presented evidence from which a reasonable jury could find the transaction was fraudulent. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). His claim of fraud rests on the affidavit of Fred Ricciardello, who states that Michelin, prior to the transfer, had "compliance problems" with regulatory agencies in several states. In addition, the agreement acknowledges that Michelin and its chairman,

Paul Michelin, were the subject of license revocation proceedings in Florida. However, Gant's mere knowledge of the pendency of such proceedings cannot be taken as knowledge of investors' specific claims, nor as evidence of fraudulent intent. Neither the nature nor the outcome of the Florida proceedings is disclosed. Nor is there any evidence that Gant knew of or participated in fraud, if there was any, perpetrated on plaintiff by Michelin, nor that Gant had notice of any claims for rescission or damages by investors. Plaintiff's own action was not filed until long after the transaction was concluded, thus it could not have provided Gant with notice of plaintiff's claims. Finally, as discussed, Gant gave valuable consideration for the purchase and plaintiff has not shown that Michelin was left unable to pay its liabilities.

█ A sale of assets by one corporation to another, in good faith and for valuable consideration, does not impose any liability on the buyer for the debts of the seller. *See Davis v. Hemming,* 101 Conn. 713, 725, 127 A. 514 (1925); *Kloberdanz,* 288 F.Supp. at 822. Because plaintiff has not presented evidence sufficient to create a genuine dispute of fact material to any exception to this general rule, the motion for summary judgment is granted.

### B. *David–Maxwell*

Defendant David–Maxwell Co. also moves to dismiss or, in the alternative, for summary judgment. Maxwell is a brokerage which, in March 1987, agreed to receive certain former Michelin customer accounts, including plaintiff's, from Gant. Gant and Maxwell advised Gant's customers, including plaintiff, of this intended transfer on several occasions. Plaintiff's account was never transferred to Maxwell. *See* Annette Marino Affidavit, ¶ ¶ 7–10 and attachments. Maxwell claims to have transacted no business either with plaintiff or Fred Ricciardello and never sold plaintiff any securities. *Id.,* ¶ 11; Glenn Davis Affidavit, ¶ ¶ 6, 10. Plaintiff has not countered those claims of fact, but argues that issues of fact exist as to whether Maxwell partici-

pated in Michelin's fraudulent scheme and as to whether Maxwell was the corporate successor of Michelin.

In opposing Maxwell's motion for summary judgment, plaintiff relies only on the affidavit of Fred Ricciardello, which states that when plaintiff purchased securities from Michelin, "a close personal relationship existed between an officer of Michelin ... Paul Michelin ... [and] an officer of [Maxwell], Sy Jacobsen." *Id.,* ¶ 3. In addition, Ricciardello states that, in order to create an appearance of compliance with federal securities laws, Michelin followed a practice of "parking," i.e., transferring stock to Maxwell at the end of every month. *Id.,* ¶ 5. Also, some brokers who worked for Michelin later worked for Maxwell and Maxwell traded in securities of the same type as did Michelin. *Id.,* ¶ 7.

█ Plaintiff's showing is patently insufficient to withstand summary judgment on either a claim of Maxwell's direct participation or its successor liability. The "parking" claim is not alleged or even alluded to in the complaint. Plaintiff has not identified a single specific transaction between Michelin and Maxwell, much less a transaction with a relationship to those in which he was involved, nor a single regulation or law that such a transaction was designed to evade. Plaintiff does not rebut defendant's evidence that it has never bought or sold securities to or from him. Plaintiff has not demonstrated that "parking," if it occurred, contributed to Michelin's scheme to defraud him. His claim is based upon the sale of unregistered securities by unregistered brokers, conduct with which "parking" has no apparent connection. A "close personal relationship" between two officers of the companies adds nothing of substance to plaintiff's charges. In short, plaintiff has shown no concrete particulars, nor evidentiary support thereof, for his claim of Maxwell's participation in fraud.

The claim as to successor liability fares no better. The affidavit of Marino, defendant's executive vice-president, states that Maxwell never purchased or acquired any of Michelin's assets. ¶ 12. As the discus-

sion of Gant's successor liability shows, even Maxwell's purchase of such assets would not, without more, impose Michelin's liability on Maxwell. Plaintiff has not established any exception to that rule. That Maxwell sold securities of the type Michelin sold, received some of Michelin's customer accounts from Gant, and hired some former Michelin employees could not conceivably, as a matter of law, justify imposing successor liability. *See* Fletcher, Cyc. Corp., § 7122–23. Accordingly, Maxwell's motion for summary judgment is granted. In view of this result, it is unnecessary to discuss defendant's motion to dismiss.

*Conclusion*

For the foregoing reasons, defendants' motions for summary judgment are granted.

SO ORDERED.