Call Center Technologies v. Grand Adventures

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: February 23, 2011          Decided: March 11, 2011)

_____

CALL CENTER TECHNOLOGIES, INC.,

*Plaintiff-Appellant*,

—v.—

GRAND ADVENTURES TOUR & TRAVEL PUBLISHING CORPORATION,
INTERLINE TRAVEL & TOUR, INC.,

*Defendants-Appellees*.[*]

Docket No. 09-1224-cv

_____

B e f o r e :    KEARSE, SACK, KATZMANN, *Circuit Judges*.

_____

Plaintiff-Appellant appeals from (1) a judgment of the United States District Court for the District of Connecticut (Squatrito, *J.*) entered on February 24, 2009, that, *inter alia*, granted summary judgment in favor of an alleged successor corporation on the issue of successor liability, and (2) a memorandum of decision and order by that court dated November 19, 2009 that, *inter alia*, denied Plaintiff-Appellant's motion to vacate this grant of summary judgment. For the reasons stated below, we **VACATE** so much of the judgment as granted summary judgment in favor of the alleged successor on the "mere continuation" theory of successor liability under Connecticut law, **AFFIRM** the judgment and order in all other respects, and **REMAND** for further proceedings consistent with this opinion.

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

Counsel for Plaintiff-Appellant:               KEVIN P. CHAMBERLIN, Danbury, Conn.

Counsel for Defendant-Appellee
Interline Travel & Tour, Inc.:             JOHN B. FARLEY (Coleman C. Duncan, *on the brief*), Halloran & Sage LLP, Hartford, Conn.

_____

PER CURIAM:

Plaintiff-Appellant Call Center Technologies, Inc. ("Call Center") appeals from (1) a judgment of the United States District Court for the District of Connecticut (Squatrito, *J.*) entered on February 24, 2009, that, *inter alia*, granted summary judgment in favor of Defendant-Appellee Interline Travel & Tour, Inc. ("Interline") on the issue of successor liability, and (2) a memorandum of decision and order dated November 19, 2009 that, *inter alia*, denied Call Center's motion to vacate this grant of summary judgment. As set forth below, we hold that the district court erred in granting summary judgment in favor of Interline on the "mere continuation" theory of successor liability under Connecticut law, but we affirm in all other respects.

## BACKGROUND

Call Center is a Delaware corporation with a principal place of business in Brookfield, Connecticut, that is in the business of selling refurbished telecommunications equipment. Grand Adventures Tour & Travel Publishing Corporation ("GATT"), which is now defunct, was at one point a publicly traded company with a principal place of business in Austin, Texas, that provided travel services and published travel magazines. On June 16, 1998, Call Center entered into an agreement with GATT (the "Customer Agreement") for the sale and purchase of a telephone system called an "Aspect Call Center," with a purchase price of $130,090 plus the cost

of installation.[1]  Call Center shipped the telephone system to GATT's offices in Texas and hired subcontractors to install the system, but asserts that apart from a deposit check from GATT's CEO in the amount of $35,000, it received no payment for this equipment.

By April 2001, GATT was experiencing financial difficulties.  It retained Duane Boyd and Lawrence Fleischman as unpaid consultants to assist with addressing its financial problems.[2]  The record contains a number of documents evincing that Boyd and Fleischman extended to GATT a series of lines of credit and loans in exchange for a security interest in GATT's assets.

Following the September 11, 2001 terrorist attacks and the resulting decline in air travel, GATT's financial troubles worsened.  Many GATT employees were laid off, and Boyd and Fleischman resigned as unpaid consultants.  On October 9, 2001, counsel for Boyd and Fleischman notified GATT that it was in default on the lines of credit and loans, and gave GATT until October 19, 2001 to pay the full amounts due, which totaled $340,000.  Meanwhile, on October 15, 2001, Boyd incorporated Interline by filing papers with the Texas Secretary of State.  Interline is a privately held corporation, and its initial board of directors consisted of Boyd, who serves as the company's president, and Fleischman, who is the chairman and CEO.  On October 19, 2001, Boyd and Fleischman transferred to Interline all rights arising under their lines of credit and loans to GATT, and that same day, counsel for Interline notified GATT's creditors of

---

[1] This agreement recites that the purchaser of the equipment is "Grand Adventures Tour & Travel, Inc.," App. 117, a name that differs slightly from that of Defendant-Appellee Grand Adventures Tour & Travel Publishing Corporation, which we refer to herein as "GATT."  In his affidavit opposing Interline's motion for summary judgment, Call Center's president asserts that when preparing the agreement, he made "a typographical error in naming the Customer as 'Grand Adventures Tour & Travel, Inc.' instead of 'Grand Adventures Tour & Travel Publishing Corporation.'"  *Id.* at 1219.  For purposes of resolving the issues on appeal, we credit this assertion, and therefore disregard any possible distinction between these two entities.

[2] Boyd was a director of GATT at the time he was retained as a consultant, and resigned his directorship shortly thereafter.

Interline's intent to conduct a public sale to dispose of GATT's collateral in order to satisfy GATT's indebtedness to Interline. Between October 24 and October 28, 2001, Interline published a paid notice in an Austin newspaper of a foreclosure sale planned for October 30, 2001, at 11:00 a.m.

On October 30, the foreclosure sale was held at the Travis County Courthouse. Interline, the sole bidder at the sale, purchased GATT's assets for $340,000. The same day, Wells Fargo Bank Texas, NA ("Wells Fargo"), which held a first lien on GATT's assets, transferred its secured debt and liens to Boyd. Wells Fargo ultimately received $105,000 in exchange for its liens.

In August 2002, Call Center sued GATT in Connecticut state court, asserting that GATT breached the Customer Agreement by failing to pay the balance due for its purchase of the telephone system. A default was entered against GATT after GATT failed to appear. In March 2003, Call Center moved to amend its complaint to add Interline, which it alleged is the successor in interest to GATT, as a defendant. That motion was granted, and in June 2003, following the filing of Call Center's amended complaint, Interline removed the action to the United States District Court for the District of Connecticut on the basis of diversity of citizenship. Thereafter, Call Center twice amended its complaint, and in the operative Third Amended Complaint, it asserts one count of breach of contract against GATT and one count of "successor liability" against Interline.

In November 2007, Call Center filed a motion for default judgment against GATT, and Interline moved for summary judgment dismissing the successor liability claim. By memorandum of decision and order dated February 18, 2009, the district court granted both motions, directed the clerk to enter a default judgment against GATT, and dismissed all claims

4

against Interline. Call Center timely appealed. While the appeal was pending, Call Center moved to vacate the judgment pursuant to Fed. R. Civ. P. 60(b)(4) on the ground that the district court never had subject matter jurisdiction because, contrary to what was represented in the parties' previous pleadings and motions, GATT was in fact a citizen of Delaware, and complete diversity was therefore lacking from the outset. In a November 19, 2009 memorandum of decision and order (the "November 2009 order"), the district court vacated the default judgment against GATT, dismissed GATT from the case pursuant to Fed. R. Civ. P. 21, remanded Call Center's claim against GATT to state court, and reaffirmed the entry of final judgment in Interline's favor.

## DISCUSSION

We turn first to the November 2009 order. We see no error in the district court's decision to cure the jurisdictional defect by dropping GATT from the case. "Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)." *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam) (citation omitted). "We review a district court's decision as to whether a party is indispensable for abuse of discretion." *Id.* at 158. It is "well settled" that Rule 21 authorizes courts to drop a dispensable nondiverse party "at any time, even after judgment has been rendered," *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989), as long as doing so would not prejudice any of the remaining parties, *id.* at 838. Call Center has neither offered any persuasive argument why GATT, a defunct corporation, was an indispensable party, nor has it explained how GATT's dismissal would cause it any prejudice. *See, e.g.*, *CP Solutions*, 553 F.3d at 160; *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 (1996) ("Once a diversity case has been tried

5

in federal court, . . . considerations of finality, efficiency, and economy become overwhelming."). For these reasons, we affirm the November 2009 order insofar as it vacated the default judgment, dismissed GATT, and remanded Call Center's breach of contract claim.

Next, we consider the district court's entry of summary judgment in Interline's favor on the issue of successor liability. "We review a grant of summary judgment *de novo*, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d Cir. 2003). Summary judgment should be granted "only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005).

> When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citations omitted). "In considering whether there is sufficient evidence to create a genuine issue of fact, the district court may not properly consider the record in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence . . . ." *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009). "In reviewing the evidence and the inferences that may reasonably be drawn, the court 'may not . . . weigh the evidence . . . .'" *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (second omission in original) (emphasis omitted). "[T]he weighing of the evidence[] and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (emphasis and internal quotation marks omitted).

While Connecticut's appellate courts have only rarely had occasion to consider questions

6

of successor liability, certain basic principles of successor liability under Connecticut law are not in dispute. In particular, courts have recognized that Connecticut follows "the general common law rule against successor corporate liability," and that

> [u]nder the general rule, a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless (1) the purchase agreement expressly or impliedly so provides; (2) there was a merger or consolidation of the two firms; (3) the purchaser is a "mere continuation" of the seller; or (4) the transaction was entered into fraudulently for the purpose of escaping liability.

*Altman v. Motion Water Sports, Inc.*, 722 F. Supp. 2d 234, 240 (D. Conn. 2010) (quoting *Ricciardello v. J.W. Gant & Co.*, 717 F. Supp. 56, 57-58 (D. Conn. 1989)). The parties here focus on the third and fourth exceptions listed above.

We first address the exception pertaining to fraudulent transactions. The Third Amended Complaint contains allegations challenging the propriety of the process by which Interline's principals obtained a security interest in GATT's assets and eventually purchased these assets at a foreclosure sale. However, in opposing Interline's summary judgment motion, Call Center neither identified any facts in the record that substantiate its allegations of fraud nor presented any legal argument as to why this transaction would qualify for the fraud exception. Call Center attempts to excuse its silence below in this regard by contending that it was Interline's burden to show that it was a bona fide purchaser of GATT's assets in all respects in order to avoid successor liability. This contention misunderstands the burdens of proof and production applicable here. Because the "general rule" is that a purchaser of assets does not assume the predecessor's liability, it follows that the proponent of successor liability must offer proof that one of the aforementioned exceptions to the general rule applies. Here, Interline moved for summary judgment in part on the basis that there was no evidence that its purchase of GATT's assets was fraudulent. At that point, it became Call Center's burden to come forward with

7

admissible evidence that raises a genuine issue of fact for trial. Because Call Center failed to

meet that burden, there was no error in the district court's decision to grant summary judgment

in Interline's favor on the "fraud" theory of successor liability.[1]

The district court also granted Interline's motion for summary judgment with respect to

the "mere continuation" exception. The Appellate Court of Connecticut has recently identified

two separate but related theories that may be available to analyze whether a purchaser is merely

a continuation of the seller — the "common law mere continuation" theory, which focuses on

continuity of ownership, and the "continuity of enterprise" theory, which does not — and has

specifically applied the latter theory to uphold a finding of successor liability. *See Chamlink*

*Corp. v. Merritt Extruder Corp.*, 899 A.2d 90, 93 & n.3 (Conn. App. Ct. 2006); *Kendall v.*

*Amster*, 948 A.2d 1041, 1051 (Conn. App. Ct. 2008); *see also Altman*, 722 F. Supp. 2d at 242-43

("In *Kendall* the Appellate Court makes it plain that 'continuity of enterprise' is not just a theory

of successor liability, it is a recognized principle of Connecticut law."); *Medina v. Unlimited*

*Sys., LLC*, — F. Supp. 2d —, 2010 WL 5253530, at *6-7 (D. Conn. Dec. 15, 2010)

("Connecticut courts treat 'continuity of enterprise' as their preferred version of the 'mere

continuation' exception, essentially defining 'mere continuation' as 'continuity of enterprise.'

. . . Connecticut courts do not view continuity of ownership as an essential requirement for a

business to be deemed a mere continuation."). This theory, in turn, provides that "successor

liability attaches where the successor maintains the same business, with the same employees

---

[1] We do not consider Call Center's arguments, raised for the first time on appeal, that Interline's acquisition of GATT's assets through the foreclosure sale was fraudulent because it was inconsistent with certain provisions of the Texas Uniform Commercial Code. *See, e.g.*, *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000) ("In general, 'a federal appellate court does not consider an issue not passed upon below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))).

doing the same jobs, under the same supervisors, working conditions, and production processes, and produces the same products for the same customers." *Kendall*, 948 A.2d at 1051 (brackets and internal quotation mark omitted). "The issue[] of whether a purchaser is a mere continuation of the selling corporation is a question of fact." *Chamlink*, 899 A.2d at 93.

On appeal, Call Center contends that the existence of fact issues should have precluded the district court from granting summary judgment on the basis that there was no continuity of enterprise.[2] In evaluating whether Call Center could establish continuity of enterprise, the district court looked to the factors of "management, personnel, physical location, assets and general business operations of the companies." *Call Center Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.*, 599 F. Supp. 2d 286, 294 (D. Conn. 2009) (citing *Collins v. Olin Corp.*, 434 F. Supp. 2d 97, 103 (D. Conn. 2006)). As set forth below, our review of these factors convinces us that Interline was not entitled to summary judgment on this ground.

First, as to management, the district court found that this factor favored Interline, noting that Boyd and Fleischman, who have the highest management positions at Interline, were not employees or officers at GATT. However, Boyd and Fleischman were not strangers to GATT. As noted, Boyd was a former GATT director, and he and Fleischman were retained by GATT's management as unpaid consultants prior to Interline's formation. In that capacity, they made loans to GATT in exchange for security interests, and it is pursuant to those agreements that they, through Interline, eventually obtained GATT's assets. Moreover, other members of

_____

[2] Despite Call Center's assertions that we should consider in this regard facts in the summary judgment record that it highlights for the first time in its appellate brief, we confine our review of this record to the facts raised by the parties below or otherwise noted in the district court's decision. *See, e.g.*, *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("[Rule] 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.").

Interline's senior management were formerly GATT employees or managers, although there is some testimony that their responsibilities differed across the two companies. While there may not be a perfect identity of management, we think that with all inferences drawn in Call Center's favor, a reasonable trier of fact could find that there is continuity in this regard.

Second, as to personnel, the district court noted that 31 out of 51 of Interline's full-time employees were former GATT employees, which is consistent with deposition testimony cited by Call Center that the "majority" of GATT employees showed up for work on the day following the foreclosure sale. To be sure, it is undisputed that the retained GATT employees had to complete certain procedural steps to stay on as Interline employees, such as filling out tax forms, but it is unclear why these formalities should be of relevance to the "mere continuation" inquiry, which looks to substance over form. In any event, given the testimony that employees answered the company's phones on the day following the foreclosure sale and the lack of evidence that any new employees were promptly brought in by Interline following the sale, it is reasonable to conclude that there was substantial continuity of employment.

Third, as to physical location, the district court identified the undisputed fact that both GATT and Interline operated out of the same office building, and noted a factual dispute as to whether the two companies were located on the same floor or in the same suites. Thus, for purposes of summary judgment, we must assume that the companies occupied the same offices, which clearly establishes continuity of location.

Fourth, as to assets, the district court acknowledged that Interline acquired GATT's tangible and intangible assets at the foreclosure sale. The district court found no indication that Interline agreed to assume GATT's liabilities or obligations other than a first lien on GATT's assets, but there is testimony in the record that Interline gave discounts to certain of GATT's

10

customers who had pre-paid for reservations, and the record also contains a chart of the "net

assets acquired" by Interline listing a number of other liabilities. Based on this evidence, Call

Center is entitled to the inference that Interline assumed several of GATT's liabilities in addition

to acquiring its assets.

Fifth, as to business operations, the district court noted that "Interline provides some, but

not all, of the same services GATT provided." *Id.* at 295. In particular, the record reflects that

both companies were in the business of providing travel services to "interliners" — *i.e.*, active

and retired airline employees — and certain other categories of travelers. While the district

court correctly observed that the overlap in the services provided by the two companies was not

exact, we think the facts that the companies shared the same core business, that Interline was

able to continue serving GATT's customers without significant interruption on the day following

the foreclosure sale, and that Interline maintained GATT's former website, together indicate

continuity in this regard as well.

Finally, we note that the record suggests that Boyd and Fleischman formed Interline,

which was incorporated shortly before the foreclosure sale, specifically for the purpose of

obtaining GATT's assets. Relatedly, the parties have provided no indication that Interline had

any of its own assets, employees, or operations prior to its purchase of GATT's assets. This

circumstance also supports a conclusion of continuity of enterprise. *Cf. Beriguette v. Innovative*

*Waste Sys., Inc.*, 2009 WL 2450773, at *2 (Conn. Super. Ct. July 7, 2009) ("[T]he mere

continuation exception seeks to determine whether 'the purchasing corporation [is] merely a

"new hat" for the seller.'" (second alteration in original)).

Based on this record, and cognizant that the ultimate question of whether there was a

continuity of enterprise between GATT and Interline is an issue of fact, we conclude that the

11

grant of summary judgment with respect to the "mere continuation" exception was in error. In our view, none of the continuity-of-enterprise factors clearly precludes a finding of successor liability; rather, each of these factors to some extent supports liability, and several of these factors implicate subsidiary factual disputes.[3] To conclude from this record that Interline was not a mere continuation of GATT would require weighing conflicting evidence and drawing inferences in Interline's favor, which are tasks reserved for the trier of fact.[4]

**CONCLUSION**

We have considered Call Center's remaining arguments and find them to be without merit.[5] Accordingly, for the foregoing reasons, we **VACATE** so much of the February 24, 2009 judgment as granted summary judgment to Interline on the "mere continuation" exception, **AFFIRM** that judgment and the November 2009 order in all other respects, and **REMAND** for further proceedings consistent with this opinion. Such proceedings should include consideration of the aspect of Interline's summary judgment motion contending that the district court lacks personal jurisdiction over Interline, which the district court previously denied as moot.

---

[3] We therefore find it unnecessary to resolve the dispute between the parties as to whether every one of the "continuity of enterprise" factors must favor the proponent of successor liability in order for such liability to attach.

[4] We acknowledge that the facts of this case bear a strong resemblance to those of *Chamlink*, where the Appellate Court of Connecticut upheld a finding of non-liability. *Chamlink*, however, is distinguishable because it involved review of factual findings following trial: the trial court had previously denied the alleged successor's summary judgment motion specifically due to the existence of fact issues relating to corporate continuation. *See Chamlink Corp. v. Merritt Extruder*, 2005 WL 1097311, at *3 (Conn. Super. Ct. Apr. 11, 2005).

[5] We have also considered and find to be without merit Interline's alternative argument for summary judgment on the basis that Call Center failed to establish that GATT was related to "Grand Adventures Tour & Travel, Inc.," the nominal signatory to the Customer Agreement.